[L. A. No. 14017. In Bank.—December 27, 1934.]

FULLERTON OIL COMPANY (a Corporation), Respondent, v. CHARLES G. JOHNSON, as State Treasurer, etc., Appellant.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Roger J. Traynor and Frank M. Keesling for Appellant.

Claude I. Parker, George H. Koster and Bayley Kohlmeier for Respondent.

THE COURT.—Defendant appeals from a judgment in favor of plaintiff rendered by the trial court upon defendant's refusal to further plead after a demurrer to the complaint had been overruled. Defendant insists that the demurrer should have been sustained without leave to amend and judgment entered in favor of the state.

The action was instituted by the Fullerton Oil Company to regain a portion of the taxes for the year 1931 assessed to it, under the Bank and Corporation Franchise Tax Act (Stats. of 1929, p. 19) and paid by it under protest. Respondent's objections to the amount of the tax exacted from it for the year 1931 arise out of the fact that the state applied to respondent in computing its tax for that year a 1931 amendment to section 8 (g) of the act (Stats. of 1931, p. 61), which amendment became effective February 27, 1931.

Before discussing the specific contentions of the parties hereto, it is first necessary to briefly refer to the constitutional and legislative background of the Franchise Tax Act. Prior to 1928 franchises of corporations were taxed under the provisions of article XIII, section 14, of the state Constitution, that section providing that all franchises of corporations should be assessed at their actual cash value. In November of 1928 there was added to the Constitution a new section, article XIII, section 16, authorizing the legislature to provide a different method for the taxation of franchises. Subdivisions 2 (a), 2 (b) and 5 of that new section read as follows:

"2 (a). All financial, mercantile, manufacturing and business corporations doing business within the limits of this state, subject to be taxed pursuant to subdivision (d) of section 14 of this article, in lieu of the tax thereby provided for, shall annually pay to the state for the privilege of exercising their corporate franchises within this state a tax according to or measured by their net income. The amount of such state tax shall be equivalent to four per cent of their net income. . . . "

"2 (b). The legislature, two-thirds of all the members elected to each of the two houses voting in favor thereof, may provide by law for the taxation by any other method authorized in this constitution of the corporations, or the franchises, subject to be taxed pursuant to subdivision (a) of paragraph 2 of this section. . . . "

"5. The legislature . . . shall define 'net income' and may define it to be the entire net income received from all sources. . . . Said taxes shall become a lien on the first Monday in March of 1929 and of each year thereafter. The legislature shall pass laws necessary to carry out this section. . . . "

Pursuant to this constitutional authority the legislature in 1929 passed the Bank and Corporation Franchise Tax Act (*supra*). The constitutionality of certain provisions of that act was before this court in *Pacific Co.* v. *Johnson*, 212 Cal. 148 [298 Pac. 489], affirmed in 285 U. S. 480 [52 Sup. Ct. 424, 76 L. Ed. 893]. Section 8 (g) of that act as originally enacted read in part as follows:

"Sec. 8. In computing 'net income' the following deductions shall be allowed. . . .

"(g). In the case of mines, oil and gas wells, other natural deposits and timber, a reasonable allowance for depletion. . . .

"The basis upon which depletion is to be allowed in respect of any property shall be as provided in sections 113 and 114 of the said Revenue Act of 1928, or upon the basis provided in section 19 hereof. . . .

"In the case of oil and gas wells the allowance for depletion shall be twenty-seven and one-half per centum of the gross income from the property during the taxable year. Such allowance shall not exceed fifty per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

Section 19 referred to in section 8 (g), *supra*, provided that for the purpose of ascertaining the gain or loss from the sale or other disposition of property acquired prior to January 1, 1928, and disposed of thereafter the basis shall be the fair market value as of January 1, 1928. The "Revenue Act of 1928" referred to in section 8 (g), *supra*, is the Federal Revenue Act of 1928. Sections 113 and 114 of the Revenue Act of 1928 above referred to provide generally that in computing the depletion allowance for companies operating oil and gas wells, as to property acquired after February 28, 1913, the cost of the property shall be used as a base and as to property acquired before March 1, 1913, either the cost of the property or its fair market value as of such date shall be used.

As already stated, section 8 (g) above quoted was amended in 1931. It is the applicability of a portion of this 1931 amendment to respondent for the year 1931, and the constitutionality of that section as amended that is involved on this appeal. So far as pertinent here the 1931 amendment provides:

"In computing 'net income' the following deductions shall be allowed. . . .

"g. . . . In the case of oil and gas wells the allowance for depletion shall be twenty-seven and one-half per centum of the gross income from the property during the taxable year. Such allowance shall not exceed fifty per centum of the net income of the taxpayer (computed without allowance

for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed in the manner provided in sections 113 and 114 of said Revenue Act of 1928.''

Respondent is an oil and gas company and owns oil and gas properties which were acquired by it prior to January 1, 1928. Under section 8 (g) of the Franchise Tax Act as it was originally enacted in 1929 respondent in computing its depletion allowance for 1931 could have used as a base, as one of its alternatives, the January 1, 1928, values of said properties. Under the 1931 amendment to the section, under this same alternative, respondent is prohibited from using the January 1, 1928, values as a base, and must use either the cost of the properties or their March 1, 1913, values.

Respondent contends that the 1931 amendment is unconstitutional, or at least not operative as to it for the year 1931 for three main reasons:

1. In the first place it is contended that in depriving respondent of the privilege of using January 1, 1928, values as a base in computing the deduction for depletion and relegating it to the March 1, 1913, values, the state is taxing the increase in value occurring between 1913 and 1928; that this increase in value is capital and not income; that under the 1928 amendment to article XIII, section 16, the legislature is limited to a tax according to or measured by net income and cannot levy a tax on capital. This is the main point to be determined on this appeal.

2. In the second place, respondent points out that the 1931 amendment to section 8 (g) only applies to corporations operating oil and gas properties, and that such corporations are the only corporations deprived of the opportunity of basing depletion on the January 1, 1928, values of their properties. It is contended that such discrimination amounts to a denial of the equal protection of the laws and constitutes a violation of the uniformity clauses of the state and federal Constitutions.

3. In any event, respondent contends the tax for 1931 became a fixed and determined liability on January 1, 1931, and it is respondent's position that since the amendment here involved did not become effective until February 27,

1931, that amendment cannot be applied to it in computing the tax due for the year 1931.

These contentions will be considered in order:

■ We do not agree with respondent that the formula provided for the computation of the depletion allowance for corporations operating oil and gas properties by the 1931 amendment in section 8 (g) above quoted results in taxing capital rather than income. Assuming that the legislature by the provision of article XIII, section 16, subdivision 2 (a), above quoted, is limited to a franchise tax measured by the income of the taxpayer (a point we do not here decide in view of the provisions of subdivision 2 (b) above quoted) it is our opinion the tax here involved is one measured by income and not capital. It is true that by the 1931 amendment respondent is deprived of the opportunity of using the January 1, 1928, values as a base, and that it must use the cost or March 1, 1913, values as a base. ■ It is further true that in thus computing the depletion allowance any increase in value in the properties occurring between 1913 and 1928 would thus be included in the tax base. That fact, however, does not make the tax one measured by capital as distinguished from income as those two terms are usually understood, and are used in the act here involved. Under the federal Income Tax Act the federal courts have established the principle that "income" within the meaning of the Income Tax Act is "realized gain", and that such realized gain is taxable in the year of its realization regardless of when it accrued. Thus under the federal act increases in the value of capital assets accruing subsequent to March 1, 1913, are taxable as income not in the year such increases in value occur, but in the year such increases in value are actually realized by sale or other transfer. (*Merchants Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509 [41 Sup. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305]; *Eisner* v. *Macomber*, 252 U. S. 189 [40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570].)

■ Respondent concedes that accretions to capital accruing after the passage of the act can be properly taxed as income in the year of their fruition, but contends that accretions to value prior to the date of the taxing act cannot be so taxed. We can see no constitutional difference between accretions to capital prior to the date of the taxing statute and those occurring subsequent thereto. If increases in the value of

property constitute income, and constitute income in the year in which realized rather than in the years when such increases in value accrue, it would seem that constitutionally speaking it makes no difference when such increases in value accrue—whether before or after the effective date of the taxing statute. This very point has already been decided in accordance with the above views by the United States Supreme Court. In *Lynch* v. *Hornby,* 247 U. S. 339 [38 Sup. Ct. 543, 62 L. Ed. 1149], and *Helvering* v. *Canfield,* 291 U. S. 163 [54 Sup. Ct. 368, 78 L. Ed. 706, it was held that dividends declared and paid by a corporation from profits and surplus accumulated prior to March 1, 1913, constitute "income" to the recipients and not "capital". A case even more directly in point is *MacLaughlin* v. *Alliance Ins. Co.,* 286 U. S. 244 [52 Sup. Ct. 538, 76 L. Ed. 1083]. That case involved the following state of facts: Under the 1913, 1916, 1917 and 1918 Revenue Acts stock fire insurance companies were taxed upon their income, including gains realized from the sale or other disposition of property accruing subsequent to March 1, 1913, but by the Revenue Acts of 1921, 1924, and 1926 such gains were again subjected to tax, including all gains accruing since March 1, 1913. The taxpayer contended that gains accruing prior to 1928 during years when such gains were not taxable, constituted capital and were therefore not taxable as income. The United States Supreme Court held that such gains were taxable on the basic theory that all such accretions in value are *income* in the year of *realization* regardless of when they accrued. The contention of the taxpayer in the MacLaughlin case is stated at page 248 [286 U. S.] as follows:

"The company contends that so much of the gain as accrued before the effective date of the Taxing Act was capital, which could not constitutionally be taxed under the Sixteenth Amendment." That is exactly respondent's contention in the present case. The Supreme Court answered this contention as follows:

"The fact that a part of the taxed gain, represented increase in value after that date [March 1, 1913], but before the present Taxing Act, is without significance. Congress, having constitutional power to tax the gain, and having established a policy of taxing it, see *Milliken* v. *United States,*

283 U. S. 15, 22, 23 [51 Sup. Ct. 324, 75 L. Ed. 809], may choose the moment of its realization and the amount realized, for the incidence and the measurement of the tax. Its failure to impose a tax upon the increase in value in the earlier years, assuming without deciding that it had the power, cannot preclude it from taxing the gain in the year when realized, any more than in any other case, where the tax imposed is upon realized, as distinguished from accrued, gain. If the gain became capital by virtue of the increase in value in the years before 1928, and so could not be taxed as income, the same would be true of the enhancement of value in any one year after the adoption of the Taxing Act, which was realized and taxed in another. But the constitutionality of a tax so applied has been repeatedly affirmed and never questioned. *The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an earlier* period before the adoption of the Taxing Act." (Citing cases.)

Respondent argues, however, that even the MacLaughlin case limits the taxing of realized gains to a period after the effective date of the Sixteenth Amendment, and tries to distinguish the case on that ground. The reasoning of the United States Supreme Court, as indicated from the quotation *supra,* was not so limited.

As a clear indication of the extent of the United States Supreme Court's opinion in the MacLaughlin case, that court cited and approved the case of *Norman* v. *Bradley,* 173 Ga. 482 [160 S. E. 413] (appeal to United States Supreme Court dismissed for want of a substantial federal question *sub nom. Glenn* v. *Doyal,* 285 U. S. 526 [52 Sup. Ct. 404, 76 L. Ed. 923]). The Bradley case is directly in point. The Georgia Income Tax Act became effective August 22, 1929, and provided for the taxation of income received on or after January 1, 1929. It incorporated by reference those provisions of the Federal Reserve Act which used March 1, 1913, value, or cost, as the basis for determining depreciation, depletion, etc. Two taxpayers sold shares of stock in February, 1929, and a third sold stock in October of 1929. The increase in value of the stock, in both instances, had admittedly occurred prior to the enactment of the statute. The tax collector assessed all of

the increased value as income for 1929. The Supreme Court of Georgia was evenly divided with respect to the tax on the profit from the sales made in February (those sales occurring before the act was passed) but held, one judge dissenting, that the profit from the sale made in October was taxable as income, even though all of such profit accrued prior to the passage of the taxing act. The basis of the majority view was that the act was aimed at *profits* from the sale or other disposition of property, and that such profits are taxable as income, but "such profits become income only when the sale is made. They may exist before in the form of increased value. They get to be income only at the time of realization by sale . . . unrealized value may exist which is not taxable as income, but which does become taxable immediately upon its present realization by the owner of the property . . . accrued profits do not become income until realized by sale, but upon such realization they are taxable immediately as income." (160 S. E. 415.) That reasoning appears to us sound and in accord with the decisions of the United States Supreme Court. We are of the opinion that from the standpoint of income taxes, or taxes measured by income, "income" must be deemed to be realized gain, and that increases in value of capital assets are income in the year they are physically realized. When such increased value of capital assets came into existence is immaterial—the only question is, when was it realized?

Respondent relies upon *State* v. *Nygaard,* 163 Wis. 307 [158 N. W. 87, L. R. A. 1917E, 563]. This case is contrary to the conclusions herein arrived at. The Wisconsin Income Tax Act was passed in 1911. By the terms of that act the legislature attempted to tax increases in value of capital assets in the year of their realization regardless of when they accrued. The taxpayer purchased certain securities in 1907, which he sold at a profit in 1914, all of said profit accruing prior to 1911. The Supreme Court of Wisconsin held that increases in value of capital assets occurring prior to the effective date of the taxing act cannot be taxed as income; that such increases in value are capital and not income; that such additions to capital cannot be made into income by legislative mandate. The difficulty with this reasoning is that it proceeds upon a misconception

of what is actually taxed. As already pointed out it is *realized gain* that is taxed, and that is taxed only in the year of its realization. The reasoning of the Wisconsin court would equally apply to capital gains accruing over a number of years subsequent to the passage of the taxing act and realized later.

We are of the opinion that the Supreme Court of the United States in the MacLaughlin case and the Supreme Court of Georgia in the Bradley case, have adopted the proper reasoning.

■ Another reason which impels the same conclusion in this particular case is that the allowance for depletion in the case of oil and gas properties is at best an approximation. The computation of depletion is of such a highly technical nature that in the absence of clear proof to the contrary the legislative discretion should not be interfered with. We have been referred to no case holding that as a matter of constitutional right an allowance for depletion in the case of oil and gas properties must include a deduction for gains accruing prior to the effective date of the act, nor, in fact, have we been referred to any case in which any court has set aside the judgment of the legislature as to what is a proper allowance for depletion. The cases are quite to the contrary. In *Darby-Lynde Co.* v. *Commissioner,* 51 Fed. (2d) 32, at page 33, it is stated: ''A taxpayer is not entitled, as a matter of right, to make any deductions from income for depletion on account of oil extracted and sold during a taxable year [citing many cases]. Authority for such deduction must be found in the applicable statutes.''

In *Prairie Oil & Gas Co.* v. *Motter,* 66 Fed. (2d) 309, at page 310, it is stated: ''The right to an allowance for depletion is a matter of grace on the part of the taxing power, and one claiming it must establish its right thereto.''

Respondent seeks to escape the compelling force of these cases, and the cases therein referred to, on the theory that the federal government under the Sixteenth Amendment is not limited to an income tax on net income but may tax gross income, while under the California constitutional provision, section 16, subdivision 2 (a), *supra,* the legislature can only tax net income. Although such a distinction in power does exist it is immaterial as far as this point is con-

cerned. In the first place, every federal revenue act passed under the Sixteenth Amendment has purported only to tax net income. In the second place, if, as respondent contends, a depletion allowance must be allowed to it as a matter of constitutional right, such right could only exist because depletion causes the taxpayer's assets — i. e., capital—to shrink. The point here involved has nothing to do with the distinction between net and gross income. The distinction here involved is between income and capital. The federal authorities above referred to are therefore directly in point and hold that the taxpayer is not entitled as a matter of constitutional right to a depletion allowance.

The second main contention of respondent requires but brief consideration. It is pointed out that the 1931 amendment to section 8 (g) applies only to oil and gas properties and that such corporations are the only corporations deprived of the opportunity of basing depletion on the January 1, 1928, values of their properties. This clearly constitutes a discrimination, and respondent contends that such discrimination amounts to a denial of equal protection of the laws in violation of the federal Constitution, and that it also violates article I, section 11 of the California Constitution providing that all general laws shall have a uniform operation. These clauses are approximately identical in scope. They have both been before the courts so many times that their scope and operation are now well defined. Neither clause prevents a discrimination based on a reasonable classification. The legislature has wide powers of classification and may classify various callings, trades and businesses for the purpose of taxation. In the so-called "chain store" tax case—*State Board of Tax Commrs.* v. *Jackson,* 283 U. S. 527 [51 Sup. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464]—the United States Supreme Court discussed these principles very clearly. The tax there involved adopted a different measure of taxation for stores known as chain stores from that applied to stores of a similar kind owned and operated as individual units. At page 537 the court stated:

"The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to

any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232 [10 Sup. Ct. 533, 33 L. Ed. 892]; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114 [30 Sup. Ct. 496, 54 L. Ed. 688]; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563 [30 Sup. Ct. 578, 54 L. Ed. 883]. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, *American Sugar Rfg. Co.* v. *Louisiana,* 179 U. S. 89 [21 Sup. Ct. 43, 45 L. Ed. 102], or if any state of facts reasonably can be conceived to sustain it. *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342 [36 Sup. Ct. 370, 60 L. Ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421]; *Quong Wing* v. *Kirkendall,* 223 U. S. 59 [32 Sup. Ct. 192, 56 L. Ed. 350]. As was said in *Brown-Forman Co.* v. *Kentucky, supra,* at page 573:

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

Many other cases might be referred to. In *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245 [43 Sup. Ct. 83, 67 L. Ed. 237], a Pennsylvania statute levied a tax on one kind of coal and excluded other types of coal. It was upheld as based on a reasonable classification. In *Lake Superior Cons. Iron Mines* v. *Lord,* 271 U. S. 577 [46 Sup. Ct.

627, 70 L. Ed. 1093], it was held the legislature could validly treat ore lands as a distinct class of property for taxation purposes, and could constitutionally tax such lands although such tax was not extended to quarries or forest lands. The case of *Stanton* v. *Baltic Min. Co.*, 240 U. S. 103 [36 Sup. Ct. 278, 60 L. Ed. 546], is quite closely in point. It was there contended that the Federal Revenue Act of 1913 was unconstitutional in that the depletion provisions of that act discriminated against mining corporations in favor of other corporations. The classification was held to be reasonable.

In view of these cases can it be said that the legislative classification of corporations owning oil and gas properties into a separate class for the purpose of computing depletion constitutes an unconstitutional exercise of power? Can it be said that there is no reasonable basis for the classification? We are clearly of the opinion that the legislature was well within its powers in making this classification. In computing what constitutes a reasonable depletion allowance for corporations operating oil and gas properties peculiar and technical problems are involved not present in the case of any other type of property. At best the formula adopted by the legislature in computing the depletion allowance for these companies must be an approximation, and that formula, in the absence of an abuse of power, though different from the formula provided for other corporations, will not be disturbed.

The last contention of respondent is equally without merit. Respondent points out that prior to the 1931 amendment to section 8 (g) it could compute its depletion allowance on the basis of the 1928 values of its properties, and that since that amendment it is deprived of that privilege. Respondent also points out that under section 2 of the act the tax for any year is computed upon the basis of the net income for the previous year. Section 4 of the act provides that taxes for the current year "shall accrue on the first day after the close of the 'taxable year'," which taxable year, in respondent's case, corresponds with the calendar year. It therefore follows that respondent's 1931 tax "accrued" on January 1, 1931, and was computed upon the net income for 1930. The tax, although accruing on January 1, 1931, was not payable until March 15, 1931,

under section 23 of the act, and under section 29 the tax became a lien on the first Monday in March, 1931. Under the provisions of section 13 of the act the taxpayer any time between January 1st and March 15th can file his return. The 1931 amendment to section 8 (g) changing the method of computation became effective February 27, 1931.

Based on these sections respondent contends that since its tax for 1931 accrued on January 1, 1931, based on its net income for 1930, at which time 1928 values could be used in computing depletion, the 1931 amendment denying that privilege cannot be used to compute the 1931 tax. To permit the February 27, 1931, amendment to apply in computing the 1931 tax, according to respondent, would be to give that amendment an unlawful retroactive effect. Respondent strenuously contends that its tax liability for 1931 became a determined and accrued liability before the effective date of the amendment. To this contention there is a conclusive answer. The retroactivity alleged is more apparent than real. If the 1931 amendment be applied in computing the 1931 tax, such application is to give the amendment a prospective rather than a retroactive operation. Although under the act the net income earned in 1930 is used as a base for computing the tax due for 1931, the tax collected in 1931 is not for the privilege of doing business in 1930 but is a tax for the privilege of doing business as a corporation in California for 1931. It is a tax for the privilege of exercising a corporate franchise for the entire year 1931—that is, the current year when the act here involved became effective. The privilege being taxed is a present and continuing privilege, the amount of the tax being measured by the transactions of a prior year. Although, under the act, the tax accrued on January 1, 1931, and became a lien on the first Monday in March, 1931, the tax imposed for that year was for the entire current year. There is no reasonable or legal basis for contending that a taxpayer is entitled, regardless of legislative action, to have current taxes computed on the same basis as past taxes have been assessed. It is well settled that taxes for the current year may be changed any time during the year, and, in fact, additional taxes may be imposed during the current year on the same subject of taxation. (*Continental Oil Co.* v. *Walker*, 285 Fed. 729; *People* v. *Kelsey*,

116 App. Div. 97 [101 N. Y. Supp. 902] ; affirmed, 188 N. Y. 541 [80 N. E. 1116] ; *American Refrigerator. Transit Co.* v. *Adams,* 28 Colo. 119 [63 Pac. 410] ; *Milliken* v. *United States,* 283 U. S. 15 [51 Sup. Ct. 324, 75 L. Ed. 809].)

For the foregoing reasons the judgment appealed from is hereby reversed.