343 So.2d 611 (1977)
DEPARTMENT OF REVENUE of the State of Florida, Appellant,
v.
LEADERSHIP HOUSING, INC., and Leadership Communities, Inc., Appellees.
No. 47440.
Supreme Court of Florida.
March 3, 1977.
*612 Robert L. Shevin, Atty. Gen., and Sydney H. McKenzie, III, Chief Trial Counsel, Tallahassee, for appellant.
Richard H. Hunt, Jr. and Samuel C. Ullman, of Smathers & Thompson, Miami, for appellees.
Brian C. Ellis, of Holland & Knight, Tampa, for Associated Industries of Florida, Inc., amicus curiae.
James E. Messer and Mitchell B. Haigler, Jr., of Thompson, Wadsworth, Messer & Turner, Tallahassee, for Morris Trading Corp., amicus curiae.
OVERTON, Chief Justice.
This cause is before this Court on direct appeal from a circuit court judgment which declared unconstitutional provisions of Chapter 220, Florida Statutes (1975). We have jurisdiction.[1]
The issue concerns the validity of the state corporate income tax upon increases in the value of capital assets which occurred prior to November 2, 1971, but were not realized by the sale or transfer of the capital assets until after the effective date of the corporate income tax constitutional amendment and the enactment of the Florida Income Tax Code. We reverse, holding that appreciation in value of a capital asset is not income until it is realized from a sale, exchange or other disposition of the asset, and that the present Florida corporate income tax on such capital gain is constitutional and proper.
The voters of Florida adopted in 1924 a constitutional provision prohibiting any state income tax.[2] That provision remained effectively unchanged until November 2, 1971, when the Florida Constitution was amended to permit imposition of a tax on the income of other than natural persons.[3] *613 Following the amendment, the Florida Legislature enacted the Florida Income Tax Code, Chapter 220, Florida Statutes (1975), which imposed an income tax commencing January 1, 1972, on other than natural persons.
The corporate appellees commenced this action as a suit for declaratory and injunctive relief, seeking a declaration that their capital gains from appreciation of real estate accruing prior to the 1971 constitutional amendment and the enactment of the taxing legislation were constitutionally protected from taxation.
Appellees asserted first that the constitutional prohibition against the taxing of income existing prior to November 2, 1971, precludes the taxation as income of all appreciation in the value of assets accruing prior to that date. Second, the appellees asserted that the levy of an income tax by the State of Florida upon capital appreciation which accrued prior to November 2, 1971, but was realized after that date constitutes harsh, arbitrary, and oppressive taxation in violation of the Due Process Clauses of the Florida and Federal Constitutions.
The trial court agreed with the appellees' contentions and granted summary judgment, holding:
* * * * * *
"2. The express constitutional prohibition against a state income tax, which was contained in the Florida Constitution until prospectively amended out on November 2, 1971, also prevents any Florida income tax upon increases in the value of property which occurred prior to November 2, 1971, even though such increases in value might be realized through a sale or other taxable transfer of such property after the effective date of the Florida Income Tax Code, Chapter 220 of the Florida Statutes.
"3. The State of Florida did not have the constitutional power to enact a tax on income prior to November 2, 1971. Appreciation in the value of property which occurred prior thereto continues to be constitutionally protected from taxation as income. The imposition of a tax upon such appreciation as income constitutes the retroactive operation of an income taxing statute, which retroactive operation impairs constitutionally vested rights without due process of law in violation of Amendment XIV, Section 1 of the Constitution of the United States of America, and Article I, Section 9 of the Constitution of the State of Florida." [Emphasis supplied]
The trial court enjoined the Department of Revenue from levying income tax on the gains at issue, and it allowed the plaintiffs to exclude or deduct gains from their income in
"an amount equal to the fair market value of such property as of November 2, 1971, for the purpose of restoring that amount to the Plaintiffs free of any Florida income tax."
From that judgment the State Department of Revenue brings this appeal.
The appellees' first contention of unconstitutionality is based on their assertion that the constitutional income tax prohibition in effect from 1924 to 1971 was intended to apply to all income in the broadest sense of the term. They argue appreciation in the value of property is such income, and that the authors and adopters of the constitutional prohibition intended that anything that partook of the nature of income would be protected from taxation. The appellees admit that the effect of their construction and the trial court's order would allow the Legislature to tax as income unrealized accretions in value to capital assets occurring after November 2, 1971, but they assume that the Florida Legislature would decline to tax it.
We realize some authorities suggest appreciation constitutionally may be taxed as it accrues. See 1 Surrey & Warren, Federal Income Taxation, 816-18 and 822-32 (1972); Lowndes, Current Conceptions of Taxable *614 Income, 25 Ohio St.L.J. 151 (1964). Nevertheless, we decline to hold that appreciation as it occurs is income. Such a holding might well be a tax benefit for the appellees, but it could be a tax liability for many others. The appellees' theory would also radically alter the cost bases of many capital assets, requiring such to be changed to the fair market value of the assets on the date of the removal of the constitutional prohibition, or the date of the statutory enactment of the Code. Unlike Section 1053 of the Internal Revenue Code, 26 U.S.C. § 1053, and its predecessors, which awarded cost bases in such assets equal to the greater of either the actual cost of the asset or its fair market value as of the effective date of the first taxing statute, a judicial decision here would not automatically incorporate the option afforded by Congress in selecting the greater of the two bases. The practical effect of the judicial decision asked for by the appellees could require a downward valuation of assets which had depreciated, imposing greater tax liability on some taxpayers.
The entire issue in this case turns on the meaning of income with respect to capital appreciation. Economists and legal scholars are unable to agree whether appreciation in value of a capital asset is income to the asset holder as it accrues or later when it is realized by separation from capital. Compare, e.g., Lowndes, Current Conceptions of Taxable Income, supra, and H. Simons, Personal Income Taxation 88 (1938), with Mullock, The Constitutional Aspects of Realization, 31 U.Pitt.L.Rev. 615 (1970), and Seligman, 9 Am.Econ.Development 517 (1919).
The appellant contends that appreciation in value of capital assets is not income until it is realized at the time of disposition, adopting the definition of income in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920).
We agree and find the proper interpretation is that capital appreciation is not true income until it has been separated from its capital. The separation from capital referred to as the doctrine of "realization" may occur on the receipt of money, other property or rights, or when some other economic benefit is enjoyed by the asset holder. This construction and interpretation follow some economists' theory of the relation of capital to income, specifically that the former is likened to the tree or the land and the latter the fruit or the crop. We approve of the appellant's reliance on Eisner v. Macomber, supra, and its concept of when capital appreciation becomes income. The definition contained therein is as follows:
"... `Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets ....
"... [It is] not a gain accruing to capital, not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested or employed, and coming in, being `derived,' that is received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal;  that is income derived from property. Nothing else answers the description." 252 U.S. at 207, 40 S.Ct. at 193.
We recognize that the Eisner doctrine and definition has been developed to include as realized income such things as (1) the value of a lessee-erected improvement on realty upon reversion of the realty to the lessor, Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864 (1940); (2) interest coupons detached from bonds and given as a gift, Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); (3) property transferred by a husband to his wife in a property settlement connected with divorce, United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). All the aforementioned circumstances constituted events upon which economic gains were enjoyed at the time of the events. No assertion is made in these cases that appreciation in and of itself is taxable. We reject appellees' *615 arguments that the appreciation became immunized from income taxation as it accrued by the Florida constitutional prohibition. We hold that bare appreciation is not income subject to income taxation. The citation by the United States Supreme Court to Eisner v. Macomber and its concept of realization recently in Ivan Allen Company v. United States, 422 U.S. 617, 633, 95 S.Ct. 2501, 45 L.Ed.2d 435 (1975), further convinces us of the correctness of this position. We believe the realization doctrine is the fairest for all taxpayers.
The second point asserted by the appellees is their contention that the tax is harsh and arbitrary. Holding as we do that there is no income until realization, this argument is without merit.[4]
In summary, we hold that appreciation becomes income only upon the sale, exchange, or other disposition of the capital asset together with the accretions thereto, and that such realized gain is income in the year of disposition regardless of when it accrued.
We reverse the trial court, uphold the constitutionality of Chapter 220 as it pertains to the taxation of capital gains accruing prior to November 2, 1971, and dissolve the injunctive order issued by the trial court in this cause.
It is so ordered.
SUNDBERG and HATCHETT, JJ., and MILLS, District Court Judge, concur.
BOYD, J., concurs specially with an opinion.
ROBERTS (Retired), J., dissents with an opinion, with which ADKINS, J., concurs.
BOYD, Justice, concurring specially.
The dissenting opinion sounds plausible, but those arguments were considered and rejected by the Florida Legislature in 1971 shortly after the income tax amendment to the Constitution was adopted. We are here confronted with the question of whether the law violates the Constitution. I think it does not.
Appellees do not cite any federal or state cases constituting binding precedent to prevent imposition of the tax as enacted by the Legislature. They argue that since many corporations acquired capital assets prior to November 2, 1971, when such income taxes were prohibited by the Florida Constitution, the state is morally and equitably bound not to tax income resulting from increased value prior to that time. I find no basis of estoppel and unfairness here sufficient to enjoin enforcement of the statute. In City National Bank of Clinton v. Iowa State Tax Commission, 251 Iowa 603, 102 N.W.2d 381, 388, substantially the same question was resolved in favor of the state, wherein the Court said:
"It must be conceded that while capital gains were not included as income in our income tax law prior to January 1, 1955, yet the exclusion was little more than an exemption, and the public should have been aware that such exemption could be removed at any session subsequent to the enactment of the income tax law in 1934."
In that case they were dealing with a statute. Here we are considering constitutional provisions. I really see little difference, since both statutes and constitutions can be changed.
In 1930, the section in which the prohibition appeared was amended, but only to permit the Legislature to impose inheritance or estate taxes, to the extent of a credit which might be provided under federal estate tax laws for estate taxes levied and collected by the states. In 1968, the *616 people of Florida adopted a revision of the Florida Constitution. Under that revision, the section containing the income tax prohibition was renumbered, and the language was modified so as to give the Florida Legislature the authority to levy a state income tax, but not in excess of any credit against federal income taxes which might be enacted by Congress in the federal income tax laws. Since the bills then pending in Congress to enact such a federal income tax credit failed, the constitutional condition precedent did not occur, and, thus, the 1968 change in the language of the Florida Constitution has never been given effect.
Although the 1924 amendment prohibited an income tax, appellees should have been aware from the above constitutional changes that the provisions against such taxes were not perpetually frozen in stone. There is simply no basis for this Court to impede the operation of the statute as written.
The critical constitutional determination in this case is that appreciated value accrued by capital assets is not income. Only if the asset is disposed of as contemplated by the statute is income realized. The tax is upon the income as opposed to being upon the capital asset. It is similar to taxing fruit extracted from trees, but without taxing either the trees or land.
If the consequences of this suit should be limited to the parties and property involved in this litigation, the determination of same by this Court would be less difficult, but this decision will establish a precedent for countless other similar situations. Changing circumstances relating to capital assets due to passing time will render it more difficult as the years pass to determine the true value of property existing in 1971 and to determine increases accruing between that time and the time of the disposition of the property contemplated by the statute. Modifications arising from such matters as market trends, population shifts, zoning, traffic and structural alterations would make it extremely difficult to arrive at the 1971 value years hence. A more reasonable and practicable approach is that espoused by the appellant. Finding no constitutional deficiency in the statute, I am compelled to join in the majority opinion.
ROBERTS, Justice (Retired), dissenting.
I am concerned with the validity vel non of the Florida Corporate Income Tax Act, Ch. 220, Fla. Stat., insofar as it may be interpreted as imposing an income tax upon a corporation's capital gain based upon appreciation in the value of its property accruing prior to November 2, 1971.
In declaratory judgment proceedings instituted by the plaintiff-corporations, appellees here, in the court below, the court sustained the plaintiffs' attack upon the validity of the Act and permanently enjoined the defendant, the Department of Revenue of the State of Florida, from "levying, imposing upon or collecting from the Plaintiffs, directly or indirectly, any Florida income tax upon gain resulting from the sale or other taxable transfer of their property, to the extent that such gain represents appreciation in the value of such property occurring prior to November 2, 1971." This appeal by the Department followed. We have jurisdiction of the direct appeal under Section 3(b)(1), Article V, Florida Constitution.
The rationale of the lower court's opinion and judgment was that the express constitutional prohibition against income taxes adopted by the people of this state in 1924 (carried forward in the 1968 Florida Constitution as Section 5, Article VII) prevented the imposition of an income tax based upon increases in the value of property, so that the Legislature's imposition of an income tax on corporations as authorized by an amendment to Section 5, Article VII, supra, adopted November 2, 1971, could not, consistent with due-process requirements of our state and federal constitutions (Section 9, Article I, Florida Constitution, and Section 1, Fourteenth Amendment, United States Constitution), operate retroactively to tax property appreciation occurring prior to November 2, 1971, even though the sale or other transfer of such property which "triggered" the income tax on capital gain *617 for federal income tax purposes (and for the Florida corporate income tax as well, see Section 220.02(4)(a), Florida Statutes) did not occur until after that date.
The judicial decisions heretofore rendered by this Court touching upon constitutional interpretation, in general, and the construction to be given the income-tax prohibition, in particular, abundantly support the judgment here reviewed.
No better expression of the rule with respect to constitutional interpretation can be found than that in Amos v. Mathews, 99 Fla. 1, 18, 126 So. 308, 316 (1930), as follows:
"The object of constitutional construction is to ascertain and effectuate the intention and purpose of the people in adopting it. That intention and purpose is the `spirit' of the Constitution  as obligatory as its written word. That spirit, however, cannot consist of mere sophistry nor of fanciful or conjectural theory. It must be found in those implications and intendments which clearly flow from the express mandates of the Constitution when considered in the light of circumstances and historical events leading up to its adoption, from all of which the purpose of the people in adopting it is to be gleaned."
And in Fairbank v. U.S., 181 U.S. 283, 21 S.Ct. 648, 45 L.Ed. 862, quoted with approval in Amos v. Mathews, supra, it was said:
"Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation."
These principles have been applied by this Court in construing liberally the income-tax prohibition adopted by the people of this state in 1924. Thus, in State ex rel. McKay v. Keller, 140 Fla. 346, 191 So. 542 (1939), the Court struck down a city ordinance purporting to impose a license tax on attorneys but providing for increased levies based on increased receipts. In ruling that the tax was, in effect, a prohibited tax on income, the court noted that, in giving effect to the rights secured by the Constitution, "the courts are required to consider the substance of things and should not be controlled by form or technical procedure." And in Owens v. Fosdick, 153 Fla. 17, 13 So.2d 700 (1943), it was held that a tax on the right of the beneficiary of a foreign trust to receive the income for life was an unconstitutional tax on income. Noting that the question of the validity of the tax should be determined "by its operation rather than by its terminology," the Court said:
"If in its practical application, therefore, a tax falls upon that which is prohibited by this section of the Constitution of the State it cannot be upheld, no matter in what terminology the taxing statute is couched, or what the Legislature has declared the tax to be. To be guided by any other view is to concede that what may not be done directly because of constitutional restrictions, may be done indirectly by legislative means accomplishing the same result, the Constitution notwithstanding. Fairbank v. United States, 181 U.S. 283, 21 S.Ct. 648, 45 L.Ed. 862. Constitutional prohibitions may not thus be so lightly evaded or circumvented. Their mandates are imperative, and they must be so construed as to give full force and effect to their manifest purpose. City of Jacksonville v. Continental Can Company, 113 Fla. 168, 151 So. 488."
Accord: Mahan v. Lummus, 160 Fla. 505, 35 So.2d 725 (1948), relying upon Owens v. Fosdick, supra, in disapproving an income tax on the right of a Florida resident to receive income from a trust estate.
It was said by this Court in State ex rel. West v. Butler, 70 Fla. 102, 133, 69 So. 771, 780 (1915), that the words or terms used in a Constitution, which is necessarily dependent upon ratification by the people, "must be interpreted in a sense most obvious to the common understanding at the time of its adoption." In 1924, when the Florida constitutional income-tax prohibition was adopted, the concept of "capital gain" as a taxable incident under the Sixteenth *618 Amendment to the federal constitution (authorizing Congress to levy a tax on incomes "from whatever source derived, without apportionment among the several States, ..."), ratified February 25, 1913, and its implementing legislation, the Federal Income Tax Law of 1913 (imposing a tax on income "from all sources," including "gains or profits and income derived from any source whatever"), had been in effect for more than ten years. And it cannot be doubted that, in adopting the constitutional prohibition against income taxes, the people of this state intended to prohibit the taxation of increases in capital assets, as well as other gains and profits, as income.
It is common knowledge  and a matter of personal knowledge to this writer  that the constitutional prohibition against taxes on inheritances and on incomes was adopted during the so-called Florida "boom" in order to create a favorable tax climate which would attract large investments of capital in this state. It was intended to encourage capital investments by prohibiting "any income tax whatsoever in this state  whether sought to be imposed against a natural person or a corporation." In re Advisory Opinion to Governor, 243 So.2d 573, 579 (Fla. 1971). To break faith with those corporations (and with natural persons, should the people of this state ever see fit to repeal the income-tax prohibition altogether) who invested their capital in this state in reliance on that constitutional covenant would unquestionably be morally wrong and, in our opinion, legally impermissible as violative of the manifest purpose and intent of the 1924 income-tax prohibition and the constitutional rights therein guaranteed.
While, as contended by the appellant, the tax falls technically upon an incident that occurred after the effective date of the 1971 amendment authorizing a tax on corporate income, in its practical application, and as a matter of economic reality, it falls upon an increase in the value of property which was constitutionally protected from a capital gains tax at the time it accrued. And it seems clear that this cannot be done for the simple reason, if no other, that "what may not be done directly because of constitutional restrictions, may not be done indirectly by legislative means accomplishing the same result, the Constitution notwithstanding." Owens v. Fosdick, supra, 13 So.2d at 703.
I have not overlooked the "realization of income" concept of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, and similar cases, relied upon by appellant in support of its contention that the tax in question is in no way a retroactive tax  that the tax is upon realization of income and that the time of accrual of gain is not important. As to this contention it might be said, as did the court in Ivan Allen Co. v. United States, 422 U.S. 617, 95 S.Ct. 2501, 45 L.Ed. 435 (1975), that "we see nothing in the `realization of income' concept of Eisner v. Macomber ... that has significance for the issue presently under consideration." The question here is the validity of a Florida income tax based upon appreciation in the value of property that accrued at a time when such a tax was prohibited by the Florida Constitution. Only one of the cases relied upon by appellant, Lynch v. Hornby, 247 U.S. 339, 38 S.Ct. 543, 62 L.Ed. 1149 (1918), appears to have involved a tax upon earnings that accrued prior to the effective date of constitutional authorization, and that case may be distinguished. It was concerned with the validity of an income tax upon a cash dividend paid to the stockholder in 1914 out of surplus accumulated prior to March 1, 1913, the effective date of the Federal Income Tax Law  and, presumably, prior to the effective date of the Sixteenth Amendment, February 2, 1913. The court said that, under the Sixteenth Amendment, Congress was authorized to tax as income without apportionment everything that became income in the ordinary sense of the word after the adoption of the Amendment, including dividends received "in the ordinary course" by a stockholder from a corporation, even though they "might appear upon analysis to be a mere realization in possession of an inchoate and contingent interest that the stockholder had in a surplus of corporate assets previously existing." (e.s.) (It might be *619 noted, parenthetically, that the Act was amended in 1916 to exclude from the effect of the tax any dividends declared out of earnings or profits that accrued prior to March 1, 1913.) The court noted that the stockholder and the corporation were two separate entities and that the stockholder had no right or title to the surplus unless or until the directors, in their discretion, should declare a dividend. Accord: Eisner v. Macomber, supra; Lynch v. Turrish, 247 U.S. 221, 38 S.Ct. 537, 62 L.Ed. 1087 (1918).
It goes without saying that appreciation in the value of property owned by the taxpayer is not an "inchoate and contingent interest" that may or may not be "realized" by the taxpayer. It is sufficiently definite to form the basis for substantial increases in ad valorem taxes based upon increases in the assessed value of the property from year to year, or for a mortgage to secure a loan, or for a financial statement for credit purposes. And in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), it was held to be taxable as income to the husband when transferred to the wife as a part of a property settlement agreement in connection with divorce. See also Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864 (1940); Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Helvering v. Griffiths, 318 U.S. 371, 63 S.Ct. 636, 87 L.Ed. 843 (1943); and James v. U.S., 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), in which the Supreme Court applied the "realization of income" tax concept in various contexts involving economic benefit to the taxpayer other than the taxpayer's personal receipt of money or property.
That the constitutional power to tax appreciation in value to the taxpayer's property (as distinguished from the "inchoate interest" of a stockholder in surplus or undivided profits) prior to the actual statutory authority to tax is a sine qua non to the validity of the tax was made clear, we think, in McLaughlin v. Alliance Ins. Co. of Philadelphia, 286 U.S. 244, 52 S.Ct. 538, 76 L.Ed. 1083 (1932). There, the court said:
"The fact that a part of the taxed gain represented increase in value after . . [March 1, 1913], but before the present taxing act, is without significance. Congress, having constitutional power to tax the gain, and having established a policy of taxing it [cit. om.], may choose the moment of its realization and the amount realized, for the incidence and the measurement of the tax. Its failure to impose a tax upon the increase in the value in the earlier years, assuming without deciding that it had the power, cannot preclude it from taxing the gain in the year when realized, any more than in any other case, where the tax imposed is upon realized, as distinguished from accrued gain... ." (e.s.)
And in all of the cases from state courts, cited by appellant, upholding the validity of a state income tax based upon capital appreciation accruing prior to the effective date of the statute imposing the tax, there was no constitutional prohibition that would prevent the imposition of the tax in question. (In fact, among all the fifty states, only Florida's constitution contained a blanket prohibition on the taxation of income, according to Prentice Hall, State and Local Taxes, All States Unit, Par. 101, 1969.) See Fidelity & Columbia Trust Co. v. Reeves, 287 Ky. 522, 154 S.W.2d 337 (1941); Fullerton Oil Co. v. Johnson, 2 Cal.2d 162, 39 P.2d 796 (1934); Kellems v. Brown, 163 Conn. 478, 313 A.2d 53 (1972); Norman v. Bradley, 173 Ga. 482, 160 S.E. 413 (1931); Shangri-La, Inc. v. State, 113 N.H. 440, 309 A.2d 285 (1973); and Tiedemann v. Johnson, 316 A.2d 359 (Me. 1974). And it is noteworthy that in the only state case in which a quasi-constitutional inhibition  based on a judicial decision declaring an income tax unconstitutional  existed, the court ruled that the new tax statute was not intended to apply retroactively to capital gains which had accrued prior to the effective date of the new tax statute  apparently to avoid an interpretation that would raise doubts as to the statute's validity. See Thorpe v. Mahin, 43 Ill.2d 36, 250 N.E.2d 633 (1969).
*620 The Legislature's purpose and intent in adopting the taxpayer's federal income tax return as the basis for the Florida tax in order to simplify the collection of the Florida tax  and thereby minimize the expense to the Department of Revenue and the taxpayer  is understandable. And, concededly, the appellees had no vested right to a continuation of the constitutional income tax prohibition, should the people of this state see fit to repeal it as to corporations. However, for the reasons noted above, their constitutional right to be free of income taxes pending the repeal extends as much to property appreciation upon which a capital gain is based as to rents and profits derived from such property. As noted in Board of Commissioners v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 So. 199 (1920), the term "vested rights" within the protection of the due process clauses of the state and federal constitutions
"... is not used in any narrow technical sense, or as importing a power of legal control merely, but rather as implying a vested interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice."
Nor can it be said that the corporate taxpayers of this state should have been reasonably forewarned that unrealized prior gains could be subjected to an income tax at some future date  a test sometimes applied in rejecting a taxpayer's contention that a particular tax which operates retroactively is so unjust and oppressive as to violate due process. See City National Bank of Clinton v. Iowa State Tax Com'n., 251 Iowa 603, 616, 102 N.W.2d 381, 388 (1960), and cases cited. In that case, the court was concerned with the Iowa income tax law adopted in 1934, which expressly excluded capital gains from the tax, and with an amendment to that law adopted in 1955 which imposed the tax on capital gains and, like Florida's tax law, adopted the federal income tax law as the basis for taxing income, including capital gains. Significantly, Iowa had no constitutional prohibition against an income tax. In ruling that the capital gains accruing during the period when the tax was excluded from the income tax  1934 to 1955  could be subjected to the tax, the court said:
"It must be conceded that while capital gains were not included as income in our income tax law prior to January 1, 1955, yet the exclusion was little more than an exemption, and the public should have been aware that such exemption could be removed at any session subsequent to the enactment of the income tax law in 1934. [cit. om.]
A contrary conclusion was reached in State ex rel. Bundy v. Nygaard, 163 Wis. 307, 310, 158 N.W. 87, 88, ruling that taxation of prior gains, even though unrealized, was so unjust and arbitrary as to be void. In holding the capital gain accruing prior to enactment of income tax law to be immune from such tax, the court said:
"When the income tax law was first passed in 1911 the stock in question was held by the plaintiff, [It has been bought 4 years before the income tax law was enacted for $110,000 thus a capital gain of $104,000.] and was then of the value of $214,000. This fact is admitted to be established. In the judgment of the court all of this was capital, or, in other words, property. Its status was fixed. No part of it could be made into income by legislative enactment. It was subject to taxation as property under the uniformity rule, but not otherwise. (bracketed portion supplied)
Unlike the taxpayers in the Iowa case, which the court found not to have been "substantially and wrongfully misled in their belief that under the circumstances existing, accrued capital increases would thereafter be used as the cost basis of such assets rather than the actual cost or the reasonable market value in 1955, or some later date, in computing taxable income", the Florida taxpayers were entitled to rely upon a constitutional immunization of capital gains from a state income tax which was adopted for the very purpose of encouraging them to invest their capital in this state. And, in our opinion, it would be unfair, *621 unjust, and unreasonable to hold that the taxpayers who accepted this state's offer of constitutional immunity from income taxes and invested their capital here had no right to rely upon the state's promises and covenants in this respect  engrafted on to our organic law  and we decline so to do.
For the reasons stated, I respectfully dissent and would affirm the decision of the trial court.
ADKINS, J., concurs.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] "Sec. 11. No tax upon inheritances or upon the income of residents or citizens of this State shall be levied by the State of Florida, or under its authority... ." Art. IX, § 11, Fla. Const. (1924).
[3] "§ 5. Estate, inheritance and income taxes.

"(a) Natural Persons. No tax upon estates or inheritances or upon the income of natural persons who are residents or citizens of the state shall be levied by the state, or under its authority, in excess of the aggregate of amounts which may be allowed to be credited upon or deducted from any similar tax levied by the United States or any state.
"(b) Others. No tax upon the income of residents and citizens other than natural persons shall be levied by the state, or under its authority, in excess of 5% of net income, as defined by law, or at such greater rate as is authorized by a three-fifths (3/5) vote of the membership of each house of the legislature or as will provide for the state the maximum amount which may be allowed to be credited against income taxes levied by the United States and other states. There shall be exempt from taxation not less than five thousand dollars ($5,000) of the excess of net income subject to tax over the maximum amount allowed to be credited against income taxes levied by the United States and other states.
"(c) Effective Date. This section shall become effective immediately upon approval by the electors of Florida." Art. VII, § 5, Fla. Const.
[4] We recognize other courts have decided similar issues on different grounds, but the results have not varied greatly. See Norman v. Bradley, 173 Ga. 482, 160 S.E. 413 (1931); City National Bank of Clinton v. Iowa State Tax Commission, 251 Iowa 603, 102 N.W.2d 381 (1960); Shangri-La, Inc. v. State, 113 N.H. 440, 309 A.2d 285 (1973); Kellems v. Brown, 163 Conn. 478, 313 A.2d 53 (1972); Fidelity & Columbia Trust Co. v. Reeves, 287 Ky. 522, 154 S.W.2d 337 (1941); Fullerton Oil Co. v. Johnson, 2 Cal.2d 162, 39 P.2d 796 (1934); Tiedemann v. Johnson, 316 A.2d 359 (Me. 1974). But see Thorpe v. Mahin, 43 Ill.2d 36, 250 N.E.2d 633 (1969).