365 So.2d 687 (1978)
S.R.G. CORPORATION, Appellant,
v.
DEPARTMENT OF REVENUE, State of Florida, Appellee.
No. 52491.
Supreme Court of Florida.
June 30, 1978.
Rehearing Denied December 14, 1978.
Kenneth M. Myers and Debra E. Cohen of Myers, Kaplan, Levinson, Kenin & Richards, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and David K. Miller, Asst. Atty. Gen., Tallahassee, for appellee.
*688 OVERTON, Chief Justice.
This cause is before us on direct appeal from a final summary judgment of a circuit court upholding the constitutionality of Chapter 220, Florida Statutes (1975). We have jurisdiction. Article V, Section 3(b)(1), Florida Constitution.
The issue concerns the applicability of Florida's new corporate income tax law to deferred taxable gains which were realized prior to November 2, 1971. We hold such gains are not taxable.
The facts of this case are not disputed by the parties and may be briefly summarized as follows. In 1963, the United States Government condemned the appellant's property, and the appellant received an award from those condemnation proceedings. In 1965, the appellant utilized the condemnation award to purchase replacement property. Pursuant to Section 1033 of the Internal Revenue Code, the appellant chose to defer the capital gain realized when he received the condemnation award. The federal income tax liability for that gain was therefore not recognized in 1963 and was deferred under the cited provision of the Code until ultimate disposition of the replacement property.
At the time of the described transactions in 1963 and 1965 there existed in the State of Florida a constitutional prohibition against the levy of a corporate income tax. Article IX, Section 11, Florida Constitution (1924). On November 2, 1971, the voters of this State adopted an amendment to our constitution allowing the imposition of a tax on the income of "other than natural persons." Article VII, Section 5, Florida Constitution. Following this amendment, the Florida Legislature enacted the Florida Income Tax Code, Chapter 220, Florida Statutes (1977), which imposed an income tax commencing January 1, 1972, on "other than natural persons."
In 1975, the appellant sold the replacement property and paid the federal income tax on the capital gain. The federal tax paid by the appellant included the deferred gain realized on the original property at the time it was condemned and the gain realized on the replacement property. The State, through its Department of Revenue, asserted that it was entitled to compute the state capital gain tax on both the deferred gain from the 1963 condemnation transaction and the gain realized on the replacement property.
The appellant then commenced this action as a suit for declaratory and injunctive relief, seeking a declaration that the State could not tax that portion of the transaction relating to the deferred gain which was realized when the property was condemned in 1963. The appellant does not contest taxation of the gain realized on the replacement property.
At trial, the appellant taxpayer asserted (1) that the Florida corporate income tax provisions could not be construed to impose a tax on gain which was "realized" prior to the effective date of the taxing statute, and (2) that, if the Florida corporate income tax provisions were construed to be applicable, taxation of the gain in this case would constitute retroactive taxation in violation of the Due Process Clauses of the Florida and United States Constitutions. The trial court rejected these contentions and granted summary judgment in favor of the appellee, Department of Revenue. We agree with the appellant's first contention and reverse.
Section 220.02(4)(a) of the Florida Income Tax Code defines "income" which is subject to taxation as:
(a) "Income," for purposes of this Code, including gains from the sale, exchange, or other disposition of property, shall be deemed to be created for Florida income tax purposes at such time as said income is realized for federal income tax purposes; [Emphasis supplied.]
The appellee, Department of Revenue, contends that the term "realized" as it appears in this section is used in a nontechnical sense. They argue that Chapter 220 contemplates taxation of all income which is recognized and reflected on the federal income tax return for the same period. Essentially, the Department of Revenue asserts *689 that recognition of income by the federal government is the event which brings the Florida tax into operation. We disagree.
The Florida Income Tax Code expressly provides that the Code shall utilize concepts of law developed in connection with the federal income tax laws. Section 220.02(3), Florida Statutes (1977). Under the federal laws, the terms "realization" and "recognition" are not synonymous. "Realization" for federal income tax purposes occurs when the taxpayer received actual economic gain from the disposition of property. See Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 85 L.Ed. 75 (1940). It is when the taxable event occurs which gives rise to actual economic gain. "Recognition," on the other hand, refers only to the time when the tax itself becomes due and payable. Ordinarily, these two events occur simultaneously, but this does not alter the fact that the two terms have distinct and different meanings.
In statutory construction, case law clearly requires that legislative intent be determined primarily from the language of the statute. Thayer v. State, 335 So.2d 815 (Fla. 1976); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). The reason for this rule is that the Legislature must be assumed to know the meaning of the words and to have expressed its intent by the use of the words found in the statute. We must, therefore, conclude that the Legislature intended to employ the federal concept of realization when it used that term in its definition of income found in Section 220.02(4)(a).
This conclusion is in full accordance with our recent decision in Department of Revenue v. Leadership Housing, Inc., 343 So.2d 611 (Fla. 1977). Although Leadership Housing involved different issues from the present case, we held that, for purposes of the Florida Income Tax Code, gain becomes true taxable income when it is realized at the time of sale or other disposition of the property. In the present case, appellant realized gain when the federal government paid it the condemnation award in 1963. That was the realized taxable event, and, in 1963, the Florida Constitution prohibited the imposition of an income tax on that transaction. We find and hold that Chapter 220 only authorizes taxation of gain which is realized by the taxpayer after January 1, 1972, and, since the disputed portion of the appellant's gain was realized in 1963, the State cannot impose an income tax on that gain.
In view of this finding we need not address the second contention of the appellant which asserts that the imposition of a tax on the portion of its gain relating to the 1963 condemnation constitutes retroactive taxation.
The final summary judgment entered by the circuit court is reversed and the cause is remanded to the circuit court with directions to enter judgment in accordance with the views expressed herein.
It is so ordered.
ADKINS, BOYD, HATCHETT and ALDERMAN, JJ., concur.
ENGLAND, J., dissents with an opinion, with which SUNDBERG, J., concurs.
ENGLAND, Justice, dissenting.
Like so many other matters in life, if you ask the wrong question you're apt to get a wrong answer. That is what a majority of the Court has done here, although the initial fault rests not with the Court but with the Department of Revenue. The department framed the issue (or it allowed S.R.G. Corporation to frame the issue) for our review as one involving the taxation of income "realized" in 1963. That was a mistake, and it has proved to be the predicate on which the Court has now fashioned its mistaken resolution of this controversy.
The issue presented for our review, I submit, is whether the department must compute the Florida income tax liability of a corporate taxpayer by reference to all "basis" provisions in the Internal Revenue Code of 1954 ("the Internal Revenue Code"), or whether it is required under the Florida Income Tax Code ("the Florida Code") to fashion a hybrid basis provision *690 for the Florida tax in situations such as the one before us. I think that the answer in the Florida Code is explicit that all federal bases  whether original cost, adjusted cost, or substituted  are to be utilized for Florida income tax purposes. As there is no constitutional defect in the statutory scheme prescribed, it follows that we have no choice but to rule with the department in this case.
S.R.G. Corporation owns property which was condemned by the United States government in 1963 ("the old property").[1] Within the time limitations expressed in Section 1033 of the Internal Revenue Code, S.R.G. reinvested the condemnation proceeds in similar property ("the new property") and was allowed by the Internal Revenue Service to defer the recognition of gain on the disposition of the old property until the new property was either disposed of or sold. The new property was then sold by S.R.G. in 1975, at which time S.R.G. reported the sale for both federal and Florida income tax purposes.
On its 1975 federal income tax return, the corporation was obliged to show as the basis for new property, for purposes of computing its taxable capital gain, the difference between the 1975 sales price and the basis of the old property.[2] For Florida income tax purposes, however, the corporation reported a gain[3] subject to tax on the difference between the 1975 sales price and the cash paid for the new property  that is, the amount received in 1963 as recompense for the condemnation of the old property. In tax terms, the corporation did not report for Florida income tax purposes the same "substituted" tax basis it reported to the federal government; rather it reported a "pseudo-cost" basis for Florida tax purposes, as if the new property had no genesis in the old property but was taxable under a Florida Code modification of Section 1012 of the Internal Revenue Code. Section 1012 provides:
"The basis of property shall be the cost of such property, except as otherwise provided in this subchapter... ."
There is no provision in the Florida Code which contemplates a modification of either the pure cost basis described in Section 1012 or a basis "as otherwise provided in this subchapter" (which includes Section 1033) of the Internal Revenue Code.
The department assessed a deficiency against the corporation, asserting that the tax basis for Florida tax purposes must be identical with that reported for federal tax purposes.[4] I am convinced that the department's basis computation, and its treatment of the corporation's 1975 gain, were correct.
Under the Florida Code, income is generated for Florida income tax purposes at the same time as income is "realized" for federal income tax purposes.[5] Both parties agree that the property acquired in 1965 and sold in 1975 (the new property) produced a gain which must be taxed on the basis of a "realization" of income in that latter year. In fact, S.R.G. concedes taxability on a portion of the proceeds of the 1975 sale.[6] Having realized income as a result of the sale of a capital asset in 1975, S.R.G. was necessarily taxable on "all" income then *691 realized[7] in accordance with the methods of accounting[8] and other tax concepts embodied in the Internal Revenue Code.[9] The Florida Code expressly states that taxable Florida income shall mean taxable income as "properly reportable for federal income tax purposes."[10] There exist no independent methods for computing "basis" under the Florida Code which differ from those under the federal Code, save in certain areas which are not germane to this proceeding.[11]
Nor is there any authority in the Florida Code for a division or segregation of taxable "gain" realized after 1971 into separate components  one taxable and one non-taxable  depending upon whether federal tax basis is computed by reference to cost or to some other methodology.
For Florida tax purposes, the initial step for computing taxable gain on a capital transaction is to identify and analyze the appropriate federal tax basis. Under the Internal Revenue Code, basis for the purpose of determining gain or loss on the "sale or other disposition of property" is determined under Section 1011. Subsection 1011(a) directs that the adjusted basis for determining the gain or loss from the sale or other disposition of property shall be determined under Section 1012 of the Code (generally cost), or under other applicable sections of Code subchapters C, K, O, and P.[12] The basis of S.R.G.'s property for federal income tax purposes was not properly determinable on the basis of its "cost" in 1965 under Section 1012 of the Code. Rather, it was determinable under Section 1033 of the Internal Revenue Code (in subchapter O), which substituted for the 1965 cost the purchase price for the old property that had been condemned in 1963. This point is not disputed.
Since there is absolutely nothing in the Florida Code to direct otherwise, the basis of S.R.G.'s property for Florida income tax purposes would likewise have to be determined by reference to Code Section 1033, rather than Code Section 1012. As shown earlier, the Florida Code fully "piggybacks" the basis provisions of the Internal Revenue Code, and it deems inconsequential for Florida purposes which of several possible bases are available to the taxpayer for federal tax purposes. Whether the corporate taxpayer is eligible for and elects for federal tax purposes to utilize a true "cost" basis or some other basis, such as one which takes into account depreciation[13] or which permits one of several forms of "substituted" basis (involuntary conversion,[14] exchange of like-kind property,[15] exchange of stock for property[16]), the Florida Code is statutorily neutral and in no way affected by the taxpayer's election.
These principles, I suppose, would present no confusion whatsoever to taxpayers or administrators were it not for Florida's constitutional ban on corporate income taxation prior to November 2, 1971. Because of that earlier prohibition, S.R.G. now contends that it is being forced to pay tax on a capital gain which was realized as a result of the sale of property in 1963, when the constitutional prohibition barred taxation. It is, I confess, an ingenious and superficially intriguing argument. One can readily see the ostensible inequity in the department's attempt to tax that "pre-1972 capital *692 gain". There are, however, two fallacies in S.R.G.'s argument. First, by reason of the taxpayer's election, there was in reality no 1963 capital gain. Second, there is in the present tax controversy (over a 1975 sale of property) no element of gain which was "realized" or taxable prior to 1972. Several alternate explanations of S.R.G.'s transactions will make these fallacies transparently clear.
First, the corporation is not being asked to pay a Florida tax on gain realized in 1963 because it is irrelevant to know in this proceeding, and the State of Florida has no interest in knowing, what amount of gain was actually realized in that year. By the taxpayer's election, the Internal Revenue Code wholly relieved the corporation of its tax burden in 1963, so that the difference between the original cost of the old property and the proceeds of its disposition in 1963 (by condemnation) is a figure which need not be a part of, and will always remain completely irrelevant to, both the federal government's tax concerns and this proceeding. The full proceeds of the 1963 non-sale disposition were put into the property acquired in 1965 and sold in 1975. The 1975 sales price of the new property could have been more or less than the non-sale disposition price of the old property in 1963. Thus, any gain "inherent" in the 1963 conversion of the old property into cash could be more or less than the amount which the corporation presently must report to the federal government as its gain on the sale of the new property in 1975.[17]
Second, the transaction can also be viewed as if S.R.G. had invested in the new property not the cash dollars it received on condemnation of the old property in 1963, as S.R.G. claims, but rather the non-depreciated amount which the corporation originally paid for the old property sometime prior to 1963, if any. That is to say, it is immaterial for federal tax purposes what happened to the 1963 condemnation receipts or how much they were  that money did not come to rest in the corporation's coffers but was immediately substituted for property of the same kind as that which had been condemned. Up until the 1975 sale of the new property, neither the federal government nor S.R.G. had any reason to treat the 1963 cash receipts as having any tax or practical significance. In fact, they both have considered those 1963 cash proceeds non-existent for federal tax purposes by carrying a substituted basis on the corporation's books for the property purchased in 1965. For all purposes, then, both S.R.G. and the Internal Revenue Service have treated S.R.G.'s only investment in the new property as being the amount which it carried on its books for the old, condemned property.
Third, viewed as a practical business matter, the old property reappeared after its condemnation in 1963 as a continuum of usable facilities and remained available for company activities up to the moment of sale in 1975. It was at that moment in time that the federal government became interested in taxing some capital gain, and the measure of that gain was the difference between the depreciated cost of the original *693 property and the ultimate (1975) sales price. Similarly, Florida is statutorily interested only in taxing the difference between the corporation's basis for the new property (using that term in the Internal Revenue Code's technical sense) and the ultimate sales price which was "realized" on a date long after the Florida Code came into effect.[18] It is only by confusing the 1975 realization event with the 1963 transaction, and attempting to treat the 1975 sale as a seriated transaction, that an argument can be made that Florida is attempting to tax something which it has no right to reach. Obviously, however, there were not two "realizations" with respect to the property sold in 1975; there was only one. The only question in this case is the basis of that property.
Fourth, an analysis of the prospective ramifications of the parties' respective positions on the operation of the Florida Code bears out the correctness of the view just expressed. In order to be consistent, S.R.G.'s position would seem to require the taxation of corporate taxpayers twice in Florida in situations like this one  once at the time of condemnation on the gain then realized, and again at the time when the substituted property is disposed of or sold. This would seem to apply even to involuntary conversions after 1971, since there is certainly no ostensible statutory justification for differentiating taxability on the basis of when a federal basis election is made. On the other side, the department admits that, under its view of taxability, if an involuntary conversion of corporate property occurs after 1972 and the taxpayer elects the benefits of Section 1033 for federal tax purposes, the department can collect no Florida tax at the time of conversion.
The department's view is correct, of course, not only as a matter of law but as a practical matter. Section 1033 was enacted by the federal government in recognition of the fact that a taxpayer has no cash with which to pay tax at the time of an involuntary conversion if the proceeds of condemnation are reinvested to their full extent in the same kind of property as was used in the corporation's business. The department's position is consistent with this practical fact, and recognizes that in the event of a post-1971 involuntary conversion made eligible for Section 1033 treatment by the taxpayer's timely reinvestment of the proceeds (or a like situation under Section 1031 or 1032 of the Internal Revenue Code), the State of Florida will have to wait for the tax (if any) that may be due when the taxpayer makes a sale or other disposition of the property which is substituted with the condemnation proceeds. That event may occur at a time in the future when the value of the substituted property has diminished to the point that there exists no gain, or at a time when the corporate taxpayer's income is not taxable in Florida for some other reason (such as a constitutional ban on corporate income taxation). In either case, the department would never receive any tax on the non-recognized but "realized" gain which came into being at the time of involuntary conversion. That possibility comports squarely with the Florida Code's wholesale adoption of all accounting and taxability concepts under the federal Code. In contrast, S.R.G.'s position (as adopted by the Court today) not only will require corporate taxpayers to pay a Florida tax when they have no available cash, but it will necessarily reduce the amount of tax to be paid, if any, at the time when the funds ultimately become available.
As a final matter, I would comment on the argument which runs through the contentions of both parties with respect to the relevance of this case to either Department of Revenue v. Leadership Housing, Inc., 343 So.2d 611 (Fla. 1977), or Clearwater Federal Savings and Loan Association v. Department of Revenue, 350 So.2d 1134 (Fla. 2d DCA 1977). Neither of those cases, I believe, is precisely applicable here, although *694 Leadership Housing offers concepts which are compatible with today's decision. In Leadership Housing the Court held that capital gain was treated by the Florida Code in the same manner as all other income arising as a result of a post-1971 taxable event, and that the Florida Code adopted the "realization" test by which to measure the tax. That case is relevant to this proceeding only because the threshold issue here is when "realization" took place with respect to the property sold in 1975. It is not dispositive in any way of the outcome of this proceeding, however, because both parties concede that realization occurred in 1975 when the new property was sold by S.R.G.
Seemingly closer in point, but really differing in principle, is the Clearwater Federal case. In that case an accounting adjustment prior to 1972 resulted in an agreement as to when tax should be paid on a taxable event which occurred prior to the effective date of the Florida Code. The Service agreed to accept tax payments spread over ten future years, and the department sought to include in the corporate taxpayer's income the amounts of gain which were spread into years after 1972 as a result of the taxpayer's agreement with the Service. The obvious difference between Clearwater Federal and this case is that there was only one taxable event in that case, and the event took place in a year prior to the effective date of the Florida Code. The tax liability of the taxpayer there arose as a result of "realization" before our tax law became effective, and unlike the present case Clearwater Federal did not involve a basis determination as to how the amount of gain should be measured. The situation in Clearwater Federal would be no different from an attempt by the Florida Code to tax installment sales which occurred prior to 1972, as to which a corporate taxpayer would spread payments to the Internal Revenue Service under Section 453 of the Internal Revenue Code. But installment sales of that type were recognized by the framers of the Florida Code to be outside the permissible reach of the Florida tax. It was recognized when the Code was passed in 1971 that the State of Florida might not be permitted to tax post-1971 income realized as a result of earlier installment sales.[19] As a consequence of that inhibition, the legislature expressly addressed the potential revenue loss and the equities of the situation by a compromise which allowed taxpayers the right to elect the installment sale treatment after 1971 (which the legislature need not have allowed), in exchange for a partial taxation of installment sales made prior to 1972.[20]
For the reasons expressed, I would hold for the department that S.R.G. Corporation is taxable in full on the gain reported on its 1975 federal income tax return from the sale of the new property.
SUNDBERG, J., concurs.

ON PETITION FOR REHEARING OR CLARIFICATION
OVERTON, Justice.
We ordinarily would not respond to a party's erroneous interpretation of an opinion in its petition for rehearing. We deem this case an exception because of the absolutely erroneous interpretation made by the appellee Department of Revenue which, because of its position, has the power and authority to implement that interpretation to the detriment of many taxpayers.
The appellee Department of Revenue in its petition for rehearing has asserted that our majority opinion mandates it to collect the capital gains tax immediately upon the realization of a gain, with no deferment being allowed if such is provided in the Internal Revenue Code. This interpretation by the appellee is without foundation.
The construction by the appellee Department of Revenue fails to take into account the date the Constitution of this State was changed to allow the corporate income tax *695 to be assessed, to wit, November 2, 1972. It further fails to take into account the fact that realization in the instant case occurred prior to the effective date of the new constitutional provision. The date is critical. Our decision was the result of a constitutional issue not present in realizations which occur after November 1, 1972. We emphasize that nothing contained in the majority opinion prohibits the deferment of a taxable gain which is realized after November 1, 1972. Any construction of our opinion which prohibits deferment is erroneous and not justified.
The petition for rehearing is denied.
ADKINS, BOYD and ALDERMAN, JJ., concur.
ENGLAND, C.J., and SUNDBERG and HATCHETT, JJ., dissent.
NOTES
[1] Actually, the property was owned by S.R.G.'s predecessor in title, but for tax purposes all parties agree that S.R.G. Corporation is to be treated as the owner.
[2] Int.Rev.Code, 26 U.S.C. § 1033(b).
[3] It is inconsequential to this proceeding that the condemnation resulted in a capital gain for federal tax purposes and ordinary income for Florida income tax purposes. See England, Corporate Income Taxation in Florida: Background, Scope, and Analysis, in Florida Corporate Income Taxation 4, 20-21 (Fla.St.Univ.L. Rev., April 1972).
[4] Although arguments of the department were cast in a somewhat different light, as earlier noted, there is no difference of opinion between the department and S.R.G. Corporation as to the effect of what the department proposed.
[5] § 220.02(4)(a), Fla. Stat. (1975).
[6] The conceded gain represents the amount by which the 1975 sale price exceeds the cash investment in the new property.
[7] § 220.02(4)(c), Fla. Stat. (1975).
[8] § 220.42(1), Fla. Stat. (1975).
[9] §§ 220.02(3) and 220.11-.13, Fla. Stat. (1975) (the latter defining the amount taxed as "adjusted federal income").
[10] § 220.13(2), Fla. Stat. (1975). There are exceptions, but none is relevant here.
[11] See, for example, § 220.13(1)(c), Fla. Stat. (1975), relating to installment sales.
[12] Section 1011(a) does state that the basis under these provisions must be adjusted as provided in Section 1016. That adjustment provision is not relevant here, except that it too recognizes the other adjustments preserved in subchapter O. Int.Rev.Code., § 1016(b).
[13] Int.Rev.Code, §§ 1011(a) and 1016(a)(2).
[14] Int.Rev.Code, § 1033(b).
[15] Int.Rev.Code, § 1031(d).
[16] Int.Rev.Code, §§ 1032(b) and 362.
[17] An example will illustrate the point. If the property was originally acquired in 1950 for $100 and condemned in 1963 for $500, the "gain" at that time would be $400 and a tax would have been paid on that gain if deferral of the tax liability had not been elected under Section 1033 of the Internal Revenue Code. If the corporation had taken the $500 and reinvested it in similar property so as to defer the recognition of that $400 gain, just as S.R.G. Corporation did in the present case, and if in 1975 the hypothetical corporation had sold the substituted property for $1,000, the total gain to be reported to the federal government in 1975 would be $900, or the difference between the sales price of $1,000 and the substituted basis of $100. The formerly inherent $400 gain would be irrelevant for 1975 tax purposes. By the same token, if the corporation had sold the substituted property in 1975 for $400, then the gain reportable for federal income tax purposes in 1975 would be $300. Obviously, the inherent $400 profit from 1963 would never have been considered a taxable gain on which the taxpayer would be obligated to pay. Just as obviously, the actual and ultimately taxable gain (if any) for any taxpayer electing Section 1033 or its companion provisions will vary depending upon the sale or disposition price of the substituted property. Thus, it is inaccurate to suggest that the 1975 sale results in taxation of the inherent 1963 gain, either for federal or for Florida income tax purposes.
[18] Again it should be remembered that S.R.G. Corporation readily concedes that the taxable event which triggered the Florida tax occurred in 1975, and that under the Florida Code there was "realization" at that time. It is not contended the new property was sold so as to trigger "realization" before the effective date of the Florida Code.
[19] See England, note 3 above, at 17-19.
[20] § 220.13(1)(c)4, Fla. Stat. (1975).