Nancy Kelley Wittenberg Secretary, Department of Professional Regulation Tallahassee
QUESTION:
Under the provisions of s. 455.11, F. S., who is entitled to take a professional or occupational licensure examination in a foreign language, and what qualifications must an individual meet in order to take such a foreign language examination?
SUMMARY:
Only those individuals who have successfully completed or graduated from an approved course of study established under ch. 74-105, Laws of Florida, as amended by ch. 75-177, Laws of Florida, are eligible to take an examination or reexamination for professional or occupational licensure in a language other than English; such a foreign language examination must be requested by 15 or more such applicants who must bear the cost of preparing and administering the alternative examination.
The statutory section to which you refer provides that
 (1) It is the declared purpose of this section to encourage the use of foreign-speaking Florida residents duly qualified to become actively qualified in their professions so that all Florida citizens may receive better services.
 (2) Any person who has successfully completed, or is currently enrolled in, an approved course of study created pursuant to chapters 74-105 and 75-177, Laws of Florida, shall be deemed qualified for examination and reexaminations for professional or occupational licensure, which shall be administered in the English language unless 15 or more such applicants request that said reexamination be administered in their native tongue. In the event that such reexamination is administered in a foreign language, the full cost to the board or commission of preparing and administering same shall be borne by said applicants.
 (3) Each board and commission within the Department of Professional Regulation shall adopt and implement programs designed to qualify for examination all persons who were resident nationals of the Republic of Cuba and who, on July 1, 1977, were residents of this state. [Section 455.11, F. S.]
 You state that several problems have arisen as you have attempted to implement this section of ch. 455, F. S., and you desire my assistance in interpreting its provisions.
 When it comes to statutory construction, the primary purpose is to ascertain legislative intent and to effectuate it. In this regard, the best evidence of legislative intent is the language of the statute itself. See S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978). When the language is clear and unambiguous, however, interpretation is not appropriate to displace the expressed intent. See Heredia v. Allstate Insurance Co., 358 So.2d 1353 (Fla. 1978). In the instant situation, the language of the statute in question appears to me to be clear and unequivocal. Section 455.11(2), F. S., describes those persons who are entitled to take licensing examinations in a language other than English. To be so entitled, a person must have successfully completed or be currently enrolled in one of the approved continuing-education courses established pursuant to ch. 74-105, Laws of Florida, as amended by ch. 75-177, Laws of Florida. Since the authority to establish those programs was repealed by the enactment of ch. 77-255, Laws of Florida, I assume that there are no longer any persons `currently enrolled' in those programs and that only graduates of those programs are entitled to take foreign language examinations. Neither s. 455.11(1) or (3) expressly states that any other person may take a foreign language examination.
 While the clear meaning of a statute is the best evidence of legislative intent, it is the purpose of statutory construction to ascertain that intent, and this must be done even when the intent appears to contradict the strict letter of the statute. State v. Sullivan, 166 So. 255 (Fla. 1928), and Ozark Corp. v. Pattishall, 185 So. 333 (Fla. 1938). In an effort to determine whether the actual legislative intent differs from the apparent intent, I have undertaken to trace the legislative history of s. 455.11, F. S., and in the process have discovered the following facts. The story begins in 1974 when the Legislature adopted ch. 74-105, Laws of Florida. The stated purpose of that act was `to encourage the use of foreign-speaking Florida residents duly qualified to become actively qualified in their professions or occupations so that all Florida citizens may receive better services.' Cf. s. 455.11(1). To accomplish this purpose, the act required the boards and commissions within what was then known as the Department of Professional and Occupational Regulation (in conjunction with the Department of Education) to approve continuing-education programs designed to train license applicants who had lawfully practiced their professions prior to July 1, 1974, in a county other than the United States. The 1-year program could be taught in a language other than English upon the request of five or more applicants. Graduates of these continuing-education programs, in order to be licensed, were required to take a written examination which was the same or substantially similar to that taken by other applicants. However, at the option of five or more applicants, the written examination could be given in a language other than English, provided each applicant could demonstrate his ability to communicate orally in basic English. Chapter 74-105, Laws of Florida, which was codified as ss. 455.014 and 455.015, F. S. (1974 Supp.), was amended during the 1975 Legislative Session. See ch. 75-177, Laws of Florida. The relevant amendments raised from 5 to 15 the minimum number of applicants who could request that the continuing-education programs and examinations be given in a language other than English.
 The following year, 1976, the Legislature passed C.S. for H.B. 2959 which repealed s. 455.015, F. S. 1975 (i.e., s. 2 of ch. 74-105, Laws of Florida, as amended by ch. 75-177, Laws of Florida). That bill failed to become law when the Governor vetoed it because he felt that its `proper legal construction . . . is impossible to decipher.' See veto message from Governor Askew to Secretary of State Smathers, dated June 29, 1976. Our story picks up again during the next regular legislative session with the introduction of S.B. 877. As introduced, that bill repealed s. 455.015, supra, and required each board and commission within the Department of Professional and Occupational Regulation to set up programs to qualify for examination all persons who were resident nationals of the Republic of Cuba and who, on July 1, 1977, were residents of Florida. Senate Bill 877 was amended on the floor of the House of Representatives by adding a new section which provided:
 Any person who has successfully completed or is currently enrolled in an approved course of study created pursuant to Chapter 74-105 and Chapter 75-177, Laws of Florida, shall be deemed qualified for examination and reexaminations, same to be administered in the English language unless 15 or more such applicants request that said reexaminations be administered in their native tongue. In the event that such reexamination is administered in a foreign language, the full cost to the board or commission of preparing and administering same shall be borne by said applicants.
See House Journal for May 26, 1977, pp. 802-803. I have reviewed the tape recordings made of the floor debate which occurred with the introduction of the above amendment. The amendment was offered by Representatives Redman and Malloy and was explained to the House of Representatives by Representative Malloy. He stated that it was intended to recognize the `equitable benefits' that have derived to those persons who have participated in the programs being repealed and `preserves them.' This amendment was concurred in by the Senate, and the bill as passed by the Legislature became law with the approval of the Governor. See ch. 77-255, Laws of Florida. This law was codified as s. 455.016, F. S. 1977.
The final chapter of this saga took place during the 1979 Legislative Session when the law in question was amended for the last time. One amendment which occurred during the 1979 session was intended only to improve clarity and need not concern us here.See s. 194 of ch. 79-400, Laws of Florida. The other amendment added what is now s. 455.11(1), F. S. See s. 5 of ch. 79-36, Laws of Florida. The law, as it existed prior to 1979 (s. 455.016, F. S. 1977), contained only two subsections. The first was that subsection discussed above which recognized and preserved the `equitable benefits' deriving to those persons who had participated in the continuing-education programs established in 1974. The second subsection was that which required the boards and commissions within the department to establish programs designed to qualify for examination those persons who were resident nationals of the Republic of Cuba and who were residents of Florida on July 1, 1977. Chapter 79-36, Laws of Florida, reorganized the Department of Professional and Occupational Regulation and renamed it the Department of Professional Regulation. That law also substantially modified and amended ch. 455, F. S., and, among other things, amended s. 455.016 by renumbering it and adding a new subsection (1). The language of this new subsection is substantially similar to the language of s. 455.014(2), F. S. 1977, which was contained originally in s. 1 of ch. 74-105, Laws of Florida.
Having reviewed the genesis of s. 455.11, F. S., I have not found anything which would indicate to me that the Legislature intended a result different from that expressed by the plain language of the statute. In 1974 the Legislature evidently felt that foreign-speaking professionals required special programs to assist them in becoming licensed in this state. As a part of that legislative program, those foreign-speaking professionals who tparticipated in continuing-education programs were given the opportunity of taking the licensing examinations in a language other than English, provided the demand was sufficient. As was stated in a previously issued Attorney General Opinion (078-18), the purpose of permitting the examination to be taken in a language other than English was `to facilitate focusing the examination process on testing the applicant's professional education and skills rather than his or her linguistic ability.' For one reason or another, the 1977 Legislature decided to revise the assistance it was providing to foreign-speaking professionals and abolished the specific programs authorized in 1974, while at the same time authorizing the establishment of other programs. Those programs are designed to `qualify for examination' former resident nationals of the Republic of Cuba who have been residents of Florida since July 1, 1977. The term `qualify for examination,' in my opinion, cannot be construed to authorize the taking of an examination in a language or form different from that offered to all applicants. As discussed previously, while the Legislature did repeal the legislative authority for establishing foreign language education courses and providing for the taking of licensing examinations in foreign languages, it specifically provided that those persons who had successfully completed those courses established under the 1974 law could continue to take the examinations in a language other than English as long as there was sufficient demand and as long as the cost of preparing and administering the alternative test was borne by the applicant.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General