Mr. William D. Townsend General Counsel Department of Revenue Carlton Building Tallahassee, Florida 32301
Dear Mr. Townsend:
This is in response to your predecessor's request for an opinion on substantially the following questions:
 1. IS AN "EMPLOYING AGENCY" WITHIN THE TERMS OF s 633.382, F.S., REQUIRED TO FUND ANY SHORTFALL IN THE FIREFIGHTERS' SUPPLEMENTAL COMPENSATION?
 2. MUST A MUNICIPALITY IN ORDER TO CERTIFY COMPLIANCE WITH s 633.382, F.S., CERTIFY THAT IT HAS FUNDED ANY SHORTFALL IN SUPPLEMENTAL COMPENSATION FOR FIREFIGHTERS?
 3. DOES THE DEPARTMENT OF REVENUE HAVE THE AUTHORITY AND DUTY TO WITHHOLD ALL REVENUE SHARING FUNDS, BEYOND THE MINIMUM ENTITLEMENT, DISTRIBUTED UNDER s 218.23, F.S., IF A MUNICIPALITY FAILS TO CERTIFY COMPLIANCE WITH s 633.382, F.S.?
He had requested the official opinion of this office with regard to certain statutes which originated through the passage of Chs. 81-287, 82-189, 83-115, and 84-244, Laws of Florida. These several laws were enacted so as to provide for authorized payment for, and authorized implementation of, certain supplemental compensation for firefighters as defined in said laws.
Initially, it should be noted that considerable ambiguity in meaning exists by virtue of certain language employed in these enactments; the Legislature may therefore desire to reexamine these statutes in order to clarify its intent.
A historical analysis of these four enactments is necessary to resolve the questions posed by your letter.
In 1981, the Legislature enacted Ch. 81-287, Laws of Florida, which was an act relating to firefighters, providing qualifications whereby firefighters may be entitled to supplemental compensation. This act created a special fund, provided for the issuance of warrants for the payment of supplemental compensation by the State Comptroller, and provided that the Division of Fire Marshal of the Department of Insurance shall determine eligibility.
The act provided:
 1. That the supplemental compensation was to be paid by the state;
 2. That the Comptroller was to prepare and sign individual warrants representing the amount to be paid out of state funds to each firefighter, upon receiving proper requisitions from the division which had been furnished to the division by the "employing agency;" and
 3. That such payment was to be made from a special fund in the state treasury to which moneys had been appropriated by the Legislature, and if the total amount of such funds was not sufficient in any year to meet the requirements of the act, "no employing agency as defined herein shall be required to fund such insufficiency, but the total amount on deposit shall be prorated by equal percentages to all eligible firefighters as provided by rule." (See, ss 2, 4, and 5 of said act.)
These various sections were codified in s 633.382, F.S. 1981.
In 1982, the Legislature amended s 633.382(5)(b), F.S., to provide that the Comptroller, instead of preparing a warrant made payable directly to each firefighter, would prepare one warrant representing the amount to be paid out of state funds to all eligible firefighters per quarter payable to each employing agency of eligible firefighters. See, s 2, Ch. 82-189, Laws of Florida.
In 1983, several substantive changes were made through the enactment of Ch. 83-115, Laws of Florida. The substance of these changes was as follows:
 1. Section 4 of Ch. 81-287, Laws of Florida (s 633.382[4], F.S. 1981) was repealed in its entirety and a new section was enacted in its place. See, s 5, Ch. 83-115, Laws of Florida. This enactment eliminated the language which provided that no employing agency shall be required to fund any insufficiency. The new language provided that the employing agency shall be responsible for the correct payment of firefighters, while the prior language had provided for the payment from a special fund in the State Treasury.
 2. Section 5, Ch. 83-115, Laws of Florida also repealed s 5 of Ch. 81-287, Laws of Florida (s 633.382[5], F.S. 1981), which had provided for the issuance of state warrants by the Comptroller. Section 5, Ch. 81-287 appears to have been replaced by the creation of the new s 633.382(4), F.S., which conclusory states that the employing agency shall be responsible for the correct payment of firefighters.
 However, direct conflicting ambiguities existed because the Legislature did not modify or amend s 633.382(2)(a), F.S., which provided in part that "every firefighter shall be paid supplemental compensation by the state." (e.s.)
 Thus, although removing the provision which authorized the Comptroller to issue state warrants and inserting language providing that the employing agency shall be responsible for the correct payment of firefighters, the Legislature did not remove the previously referred to language requiring supplemental compensation to be paid by the state.
The 1983 Legislature also amended s 218.23, F.S., which deals with revenue sharing by adding a new subsection (1)(e). See, s 6, Ch. 83-115, Laws of Florida, creating s 218.23(1)(e) which imposes an additional eligibility requirement on the right of a unit of local government to receive revenue sharing funds beyond the minimum entitlement in any fiscal year by requiring, among other things, certification that the provisions of s 633.382, F.S., were met.
Further, the 1983 act, s 5 of Ch. 83-115, Laws of Florida, appropriated all moneys which had been placed in the Insurance Commissioner's Regulatory Fund to the applicable fund of the revenue sharing act of 1972, which had not been distributed to municipalities. This was the source of funds for the special fund which had been created in 1981 for the payment of supplemental compensation.
The logical conclusion which can be drawn from these enactments is that the state is no longer to make direct distributions to either individual firefighters or to employing agencies for the supplemental compensation, and that instead units of local government are to receive the supplemental compensation as part of the revenue sharing package administered by the Department of Revenue upon proper certification of eligibility as required under s 218.23, F.S.
In 1984, the Legislature enacted Ch. 84-244, Laws of Florida, amending s 633.382, F.S. This enactment specifically eliminated the ambiguity which had been created in 1983 by amending s633.382(2), F.S., to substitute the words "employing agency" in place of the "state." This apparently was intended to correct the Legislature's oversight which had been left unchanged in the amendment in 1983, and to clarify the legislative intent that supplemental compensation was to be paid by the "employing agency" and not the "state."
Additionally, the Legislature in amending s 633.382, F.S., also revised the catchline or title to the section to eliminate the language "from state." In ascertaining the legislative intent, one must give due weight and effect to the title of this paragraph, supplied by the Legislature. Berger v. Jackson, 23 So.2d 265
(Fla. 1945); Sadowski v. Shevin, 345 So.2d 330 (Fla. 1977). The title is more than an index to what the section is about or has reference to, it is a direct statement by the Legislature of its intent. Berger v. Jackson, supra; State v. Webb, 398 So.2d 820
(Fla. 1981).
In statutory construction, legislative intent is determined primarily from the language of the statutes, and the Legislature is presumed to know the meaning of the words used and to have addressed its intent by using them in the enactment. S.R.G. Corporation v. Department of Revenue, 365 So.2d 687 (Fla. 1978).
The starting point for interpreting a statute is the language of the statute itself; absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive. Consumer Products Safety Commission v. G.T.E. Sylvania, 447 U.S. 102 (1980). Inasmuch as a statute is to be taken, construed and applied in the form enacted, the law clearly requires that the legislative intent be determined primarily from the language of the statute, since the Legislature must be assumed to know the meaning of the words and to have expressed its intent by the use of the words found in the statute. Thayer v. State,335 So.2d 815 (Fla. 1976).
In response to your first question, the foregoing analysis demonstrates clearly that as originally enacted, the Legislature had specifically provided that "no employing agency shall be required to fund such insufficiency" should the total amount of the funds appropriated by the state not be sufficient in any year to meet the requirements of the section. This language was repealed in 1983 and two extremely significant changes were made which mandated that the employing agency shall be responsible for the correct payment of firefighters, and that eligibility for revenue sharing would include certification that the provisions of s 633.382, F.S., had been met.
Had the Legislature intended that employing agencies not be required to fund any shortfall, it could have easily so provided by simply continuing the language as it had existed in the 1981 amendment. It is a recognized principle of statutory construction that when the Legislature amends a statute by omitting or including words, it is to be presumed that the Legislature intended the statute to have a different meaning than that accorded it before the amendment. Capella v. Gainesville,377 So.2d 658 (Fla. 1979). With regard to a statutory amendment, the rule of construction is to assume that the Legislature intended the amendment to serve a useful purpose. Likewise, when a statute is amended, it is presumed the Legislature intended it to have a meaning different to that accorded it before the amendment. Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362
(Fla. 1977).
The supplemental compensation provided for firefighters appears to be couched in mandatory language since the word "shall" is used. See generally, Brooks v. Anastasia Mosquito Control District,148 So.2d 64 (1 D.C.A., Fla., 1963), Florida Tallow Corporation v. Bryan, 237 So.2d 308 (4 D.C.A., Fla., 1970) (word "shall" when used in statute according to normal usage has a mandatory connotation). The use of the word "shall" coupled with the legislative history as discussed herein leads me to the conclusion that the Legislature intended that each employing agency must fund any shortfall. Accordingly, I am of the opinion that an employing agency within the terms of s 633.382, F.S., is required to fund any shortfall in the firefighters supplemental compensation.
Furthermore, since s 218.23(1), F.S., provides that a unit of local government, in order to be eligible to participate in revenue sharing beyond the minimum entitlement in any fiscal year, is required to certify compliance with s 633.382, F.S., and since it is my opinion that a municipality is required to fund any shortfall in the firefighters supplemental compensation, I am of the opinion that a municipality in order to certify compliance with s 633.382 must certify that it has funded such a shortfall. If a municipality fails to certify compliance with s 633.382, F.S., then pursuant to s 218.23(1), F.S., said municipality is not eligible to participate in revenue sharing beyond the minimum entitlement and the Department of Revenue would not be required to distribute revenue sharing funds beyond minimum entitlement to said municipality.
In summary, it is my opinion until legislatively or judicially determined otherwise that an "employing agency" within the terms of s 633.382, F.S., is required to fund any shortfall in the firefighters supplemental compensation and that a municipality in order to certify compliance with s 633.382, F.S., must certify that it has funded any shortfall in supplemental compensation for firefighters. Additionally, if a municipality fails to certify compliance with s 633.382, F.S., then pursuant to s 218.23(1), F.S., said municipality is not eligible to participate in revenue sharing beyond the minimum entitlement and that the Department of Revenue would not be required to distribute revenue sharing funds beyond minimum entitlement to said municipality.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joseph C. Mellichamp, III Assistant Attorney General