SMITH, Judge.
This is an appeal from a final judgment granting declaratory and injunctive relief to Seaboard Coastline Railroad Company (SCL) regarding a proposed corporate income tax assessment by the Florida Department of Revenue (DOR) for the tax years 1972 and 1973, in the amount of $95,279.41 and $114,334.90, respectively. We affirm in part and reverse in part.
Seaboard Coastline Railroad Company (SCL), a wholly-owned subsidiary of Seaboard Coastline Industries conducting business in Florida, is required to file Florida corporate income tax returns annually. DOR’s rejection of certain computations in SCL’s returns for 1972 and 1973 prompted this action by SCL. The issues on appeal are as follows:
I.Whether the trial court erred in allowing Seaboard to deduct $9,486,988.00 for 1972 and $9,486,-988.00 for 1973 as depreciation expenses for Korean War assets in computing its Florida corporate tax liability under Chapter 220, Florida Statutes, when for federal income tax purposes depreciation related to those assets was not allowable.
II.Whether the trial court erred in allowing Seaboard to deduct refunds of freight paid by shippers amounting to $1,598,860.00 for 1972 and $648,381.00 for 1973 in computing its Florida corporate tax liability under Chapter 220, Florida Statutes, and the Internal Revenue Code of 1954, as amended, since Seaboard was required to compute its federal income tax liability under Section 1341(a)(5) of the Internal Revenue Code, which does not allow a deduction, as such, for such payments.
III.Whether the trial court erred in allowing the organizations known as the Clinchfield Railroad Company and the Georgia Railroad Company to be treated as associations taxable as corporations for the purposes of computing Seaboard’s Florida corporate tax liability.
As a different set of facts underlies each issue on appeal, each will be treated separately.
I. Korean War Assets
From 1952 through 1954, SCL bought and placed in service certain railroad equipment. In order to encourage railroads to buy capital assets to be used in the war effort, the railroads were permitted to elect a 60-month amortization period under Section 168, Internal Revenue Code (IRC), rather than use the straight-line depreciation method of Section 167, IRC. For federal income tax purposes, 80% of the cost of these assets acquired by SCL was fully amortized prior to the enactment of the Florida corporate income tax code in 1972. *1351 The remaining 20% was depreciated over 25 years and is not in dispute.
Despite the fact that accelerated depreciation was permitted under the IRC, the Interstate Commerce Commission (ICC) required that SCL maintain separate accounting books on which 100% of the cost of the assets was still being depreciated in 1972 and 1973. Based on the cost remaining on the ICC books in those years, SCL took a depreciation deduction for these assets on its Florida tax returns by reducing its federal taxable income, on which Florida tax is based, by those amounts. However, SCL did not actually take any depreciation deduction for these assets on its federal tax returns for those years, since they had already been fully amortized, in most cases by 1960 and no further depreciation deduction was allowable. There is no dispute as to the amounts of the claimed deductions; the dispute is over the legitimacy of the deductions under Chapter 220 of the Florida code.
Appellee SCL relies on Section 220.-02(3), Florida Statutes, and on cases applying it to support its deduction of depreciation expenses on its 1972 and 1973 returns. We conclude that DOR is correct in its assertion that these deductions are not authorized under Section 220.02(3), the Florida scheme of taxation, or under Florida case law.
The statute in question, Section 220.02(3), Florida Statutes, is embodied in the general statement of legislative intent and provides:
It is the intent of the Legislature that the income tax imposed by this code utilize, to the greatest extent possible, concepts of law which have been developed in connection with the income tax laws of the United States, in order to:
(a) Minimize the expenses of the Department of Revenue and difficulties in administering this code;
(b) Minimize the costs and difficulties of taxpayer compliance; and
(c) Maximize, for both revenue and statistical purposes, the sharing of information between the state and federal government.
In other words, the legislative intent is to harmonize the Florida scheme of taxation with the federal blueprint. This intent is evident in the later, more specific sections of the code which require the taxpayer to begin its computation of its Florida tax with the amount of its properly reportable federal taxable income. Section 220.13(2), Florida Statutes. This purpose may also be seen in Sections 220.43(1) and (2), which provide:
(1) ... each taxpayer making a return under this code shall take into account the items of income, deduction, and exclusion on such return in the same manner and amounts as reflected in such taxpayer’s federal income tax return for the taxable year.
(2) A final determination under the Internal Revenue Code adjusting any item or items of income, deduction, or exclusion for any taxable year shall be prima facie correct for purposes of this code to the extent such item or items enter into the determination of net income under this code.
Therefore if SCL had taken the depreciation deduction on its federal returns for 1972 and 1973, and these had been disallowed (as they surely would have been since the assets were fully amortized for federal purposes) by the IRS, apparently the Department of Revenue (DOR) would have been required to accept that disallowance as correct, and presumably the Florida deductions would also have failed. Although SCL was clearly prohibited from taking the deduction on its federal returns, it nevertheless sought to circumvent this provision by taking the deduction on paper from the federal taxable income used as its Florida tax base. Rather than harmonizing the two taxing models, this procedure drives them apart.
SCL argues that Section 220.02(3), Florida Statutes, authorizes any deduction which can be related to a “federal concept,” and maintains that these subtractions are in addition to those authorized by Section 220.13(1), Florida Statutes. However, the cases cited by appellee to support *1352 this proposition are readily distinguishable from the instant case.
In S.R.G. Corporation v. Department of Revenue, 365 So.2d 687 (Fla.1978), the Florida Supreme Court utilized the Section 220.-02(3) federal concepts provision to construe the word “realization” as used in the Florida code. The court determined that, in keeping with the harmonizing principles enunciated in the statute, the meaning of “realization” would be identical to its meaning for federal purposes. This determination permitted the taxpayer to omit a portion of gain it received on a sale of property after the Florida tax was implemented, since that amount had been “realized” prior to that time. It must be emphasized that no deduction was authorized; this case merely construed the code in such a way that certain income was held not to be taxable by the state.
In Clearwater Federal Savings and Loan Association v. Department of Revenue, 350 So.2d 1134 (Fla. 2d DCA 1977), the district court also used this section to determine the taxability of a refund of intangible taxes paid before the imposition of Florida corporate tax. The court applied the tax benefit rule, Section 111, IRC, via Section 220.02(3), Florida Statutes, and determined that the taxpayer was not required to report the refund as income on its Florida tax returns, since it had incurred no previous tax benefit, in the form of a deduction, for state purposes. Again, we note that the court was not sanctioning the invention of a deduction by a taxpayer; like the Supreme Court in S.R. G., it was merely deciding the proper timing for the reporting of deductions or income by reading the federal and Florida codes together.
In Buchwald Enterprises, Inc. v. DOR, 375 So.2d 861 (Fla. 3d DCA 1979), the taxpayer had incurred and deducted expenses related to real estate development on its federal tax returns prior to the inception of the Florida tax. Federal law permitted deferment of the actual payment of the expenses until the property was sold in 1972, after the enactment of the Florida code. Of course, the taxpayer did not take the deduction on its federal return a second time in 1972, but it did take the deduction on its Florida return. The court permitted the deduction, not in reliance upon Section 220.02(3), Florida Statutes, which is not mentioned in the opinion, but on the authority of Sections 220.13(1) and (2), Florida Statutes, which require that the calculation of the Florida tax begin with the amount of federal income that is “properly reportable” for the tax year. By contrast, unlike the claimed deduction in Buchwald, the amounts claimed by SCL for the taxable years in question were not properly reportable for federal purposes.[1]
Finally, appellee argues that the deduction should be allowed since it would be inequitable not to permit state tax deductions for the depreciation of assets which are still producing revenue subject to taxation by the state. This argument has surface appeal, but does not withstand in-depth consideration. SCL admitted at trial that it owned other fully depreciated assets which were still in service and producing revenue taxed by the state, but for which no deduction was taken for Florida purposes. Furthermore, when drafting the income tax code, the Florida Legislature had before it a proposal to permit revaluation for tax depreciation purposes of capital assets at fair market value as of the end of 1971. The Legislature weighed the inequities against the administrative nightmare which revaluation would produce, and the proposal was omitted from the final version of the tax code. Arthur J. England, “Report to the House on Proposed Income Tax Legislation,” November 3, 1971, pp. 2-5.
Finally, we conclude that Section 220.-02(3), Florida Statutes, does not permit a deduction for depreciation expenses for fully depreciated property simply because the taxpayer is required to keep two sets of *1353 books, Accordingly, we reverse on this issue.
II. Section 1341 Claim of Right Deduction
In 1972 and 1973, SCL was required to refund amounts paid to it by shippers and other railroads in earlier years. SCL paid federal tax on those amounts as income in the years received. No Florida tax was paid because the monies were received pri- or to the imposition of the Florida tax.
On its original federal returns for 1972 and 1973, SCL computed its federal tax under Section 1341(a)(5), IRC, and accordingly took no deduction for the amount repaid. On its Florida, returns, SCL claimed a deduction for the amounts repaid. These deductions were disallowed by the DOR because no corresponding deductions had been taken on its federal returns and the Section 1341(a)(5) tax credit is not a recognized subtraction under the Florida code. SCL subsequently filed amended federal returns on which it both deducted the amounts repaid, under Section 1341(a)(4), and calculated its tax under Section 1341(a)(5), IRC, with no change in the amount of taxes paid. These returns were audited by the IRS and the deductions were accepted by them. SCL then filed amended Florida returns based on the amended federal returns. The DOR again disallowed the deductions. The amounts are not in dispute.
Section 1341 was added to the federal code to relieve the inequity which occurs when a taxpayer is required to repay a sum of money in a given tax year on which he had paid taxes in a previous year, when his tax bracket has changed significantly. This provision permits the taxpayer to compute his taxes for the year of repayment either by taking the deduction in the year of repayment under Section 1341(a)(4), or by calculating the decrease in tax for the year of receipt which would have resulted had the item not been included in gross income for that year under Section 1341(a)(5). Under the latter provision, no “deduction” is taken in the year of repayment. The tax due for the year of repayment is the lesser of these amounts.
DOR argues that since SCL was required to compute its federal taxes under Section 1341(a)(5), the statute by its terms forbids it also to take the deduction which repayment of amounts received under a claim of right otherwise produces. However, appellant does concede that, had the circumstances been such that the tax benefit to SCL would have been greater using the deduction provision of Section 1341(a)(4), rather than Section 1341(a)(5), thus requiring SCL to proceed under (a)(4), the deduction on its Florida return would have been allowed.
The intent of Section 1341 is to ease the taxpayer’s burden in the claim of right situation. He is obliged to utilize the method which results in the lesser amount of tax. Under appellant’s reasoning, we are faced with the unjust and illogical result that if the taxpayer’s federal taxes are computable (to his greater advantage) under Section 1341(a)(4), he will be permitted to take a deduction on his Florida tax return; however, should he be required to fall under Section 1341(a)(5) (in order to reap the greater advantage), the Florida deduction will not be allowed. It is clear that for federal tax purposes the end result of treatment of the refunds is to effect a reduction in the tax burden, whether the tax is required to be computed under 1341(a)(4), or 1341(a)(5). We refuse appellant’s invitation to exalt form over substance, and affirm the decision of the trial court allowing the deductions.
III. Tax Treatment of the Clinchfield and Georgia Railroad Companies
The Clinchfield Railroad Company "was organized in 1924 when the Atlantic Coastline Railroad (later SCL) and the Louisville and Nashville Railroad (L&N)[2] took a lease on various railroad properties. The ICC approved the lease and under its regula *1354 tions, a separate lessee organization, Clinchfield Railroad, was set up to operate the leased properties. The Georgia Railroad was established in 1881, when certain railroad properties were leased by William Wadley. This lease was transferred several times and; in 1899, was acquired by Atlantic Coastline Railroad (later SCL) and L&N Railroad. Like Clinchfield, the Georgia Railroad was classified by the ICC as a “lessee organization.”
On its amended federal tax returns for 1972 and 1973, SCL reported income earned through the operation of the Georgia and Clinchfield Railroads as income earned by separate associations. SCL also filed amended Florida consolidated returns for these years on which it did not report income earned from the operation of these railroads. The parties have stipulated that, if Clinchfield and Georgia Railroads are associations taxable as corporations, the income and loss of these companies were properly excluded from SCL’s Florida tax returns. The parties further stipulated that the determination of whether these railroads are associations taxable as corporations will be made according to the definitions contained in Section 7701(a)(3), IRC, and Treas.Reg. 301.7701-1, et seq. These regulations set out the four major corporate characteristics: (1) centralized management; (2) limited liability; (3) continuity of life; and (4) free transferability of interests, and specify that if an organization possesses more corporate than non-corporate characteristics, it will be an association taxable as a corporation. The parties stipulated that Clinchfield and Georgia Railroads have centralized management and lack limited liability. Therefore, in order to be classified as associations taxable as corporations, the railroads must be found to possess both continuity of life and free transferability of interests.
The presence or absence of corporate characteristics is determined under the facts and circumstances of each case. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); Treas. Reg. 301.7701-2(a)(l). The findings of the trial court must be upheld if there is substantial evidence to support them. Commissioner v. Horseshoe Lease Syndicate, 110 F.2d 748 (5th Cir.1940). There is ample competent evidence in the record to support the trial judge’s determination, and we affirm.
In sum, we affirm as to Points II and III. We reverse as to Point I, and remand to the trial court for entry of appropriate judgment consistent with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
MILLS and THOMPSON, JJ., concur.

. Cf., Treas.Reg. 1.161 which provides that "[d]ouble deductions are not permitted. Amounts deducted under one provision of the Internal Revenue Code of 1954 cannot again be deducted under any other provision thereof." Since SCL amortized the expenses under Section 168, IRC, it may not be permitted to deduct the same amounts under Section 167, IRC.

. SCL and L&N are owned directly or indirectly by Seaboard Coastline Industries, which exercises control over both entities.