The Honorable Jim Frishe Representative, District 57 6651 49th Street, North Pinellas Park, Florida 34665
Dear Representative Frishe:
You ask substantially the following question:
Does s. 718.114, F.S., as amended by s. 9, Ch. 90-151, Laws of Florida, permit a condominium association authorized to conduct bingo games as provided in s. 849.093, F.S., to use a portion of the money collected in conducting such games to be used for the purpose of buying supplies?
In sum:
Inasmuch as s. 718.114, F.S., as amended, conditions the condominium association's right to conduct bingo games on the return of all gross, as opposed to net, receipts from such games to the players in the form of prizes, the association is not authorized to use a portion of the money collected in conducting such games to buy supplies.
Section 9, Ch. 90-151, Laws of Florida, amended s. 718.114, F.S., effective October 1, 1990,[1] to include the following language:
A condominium association which is an exempt organization pursuant to s. 528 of the Internal Revenue Code of 1986, as amended, may conduct bingo games as provided in s. 849.093. Any such organization's right to conduct bingo is conditioned upon the return of all of the gross receipts from such games to the players in the form of prizes. None of the gross receipts may be used for any other purpose. If at the conclusion of play on any day during which a bingo game is allowed to be played under this section there remain proceeds which have not been paid out as prizes, the organization conducting the game shall at the next scheduled day of play conduct bingo games without any charge to the players and shall continue to do so until the proceeds carried over from the previous days' play have been exhausted. Any other provision of law to the contrary notwithstanding, no organization other than the condominium association which is an exempt organization pursuant to s. 528 of the Internal Revenue Code may conduct bingo games on the condominium property.[2]
It is a basic principle of statutory construction that a statute should be construed so as to ascertain and give effect to the intent of the Legislature.[3] That intent, however, is primarily determined from the language used in the statute.[4] Where a statute does not specifically define words of common usage, such words are to be construed in their plain and ordinary sense.[5]
The word "gross," when used as an adjective, has been defined as "without deductions," while the word "receipts" generally refers to "something that is received, the amount or quantity received."[6]
The term "gross receipts" has been defined as referring to the gross amount of cash received, the total receipts before deducting expenditures for any purpose.[7]
The plain language of the term "gross receipts" would, therefore, appear to refer to the entire sum received by a condominium association for the games. My examination of the legislative history surrounding the amendment of s. 718.114, F.S., failed to reveal any evidence that the Legislature intended that receipts collected by the condominium association be used for any purpose other than for prizes.
Accordingly, I am of the opinion that inasmuch as s. 718.114, F.S., as amended, conditions the condominium association's right to conduct bingo games on the return of all gross, as opposed to net, receipts from such games to the players in the form of prizes, the association is not authorized to use a portion of the money collected in conducting such games to buy supplies.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 27, Ch. 90-151, Laws of Florida, providing that the effective date of the act is October 1, 1990.
[2] See, s. 849.093(1)(a), F.S., defining "Bingo game" to mean the activity in which the participants pay a sum of money for the use of one or more bingo cards. When the game commences, numbers are drawn by chance, one by one, and announced. The players cover or mark those numbers on the bingo cards which they have purchased until a player receives a given order of numbers in sequence that has been preannounced for that particular game. This player calls out "bingo" and is declared the winner of a predetermined prize. More than one game may be played upon a bingo card, and numbers called for one game may be used for a succeeding game or games. And see, s. 849.093(1)(b), F.S., defining "Bingo card."
[3] See, e.g., City of Tampa v. Thatcher Glass Corporation,445 So.2d 578 (Fla. 1984).
[4] See, St. Petersburg Bank Trust Co. v. Hamm, 414 So.2d 1071
(Fla. 1982); S.R.G. Corporation v. Department of Revenue,365 So.2d 687 (Fla. 1978).
[5] State v. Stewart, 374 So.2d 1381 (Fla. 1979); Thayer v. State,335 So.2d 815 (Fla. 1976).
[6] See, respectively, The Random House Dictionary of the English Language Gross 624 and Receipt 1198 (unabridged ed. 1967). And see, Webster's Third New International Dictionary Gross 1002 (an overall total exclusive of deductions such as taxes, expenses), and Receipt 1894 (something that is received) (unabridged ed. 1981).
[7] See, 38 C.J.S. Gross pp. 1082-1083; Black's Law Dictionary Gross 832 (4th rev. ed. 1968) (the term "gross income" may mean the "gross receipts" of a business before deduction or expenditures for any purpose being equivalent to "gross proceeds" or "gross receipts" as distinguished from "net income" which is that portion of the receipts which remain after paying wages and paying for materials).